## HESS *v.* ADLER.

### Opinion delivered February 17, 1900.

1. JUDGMENT AGAINST SURVIVING PARTNER—EFFECT.—A complaint on a partnership note alleged that the note was given by defendant H. and his deceased partner, A., late partners doing business under the firm name of H. & A. The proceeding was based on constructive service merely, the attachment writ and summons being against defendant H. "of the late firm of H. & A." The judgment was rendered against "the defendant," without further description. *Held*, that the proceedings taken were against defendant individually, and not as surviving partner, and that the judgment did not bind the estate, nor authorize a sale of the interest, of the deceased partner in the firm lands. (Page 454.)

2. PLEADING — AMENDMENT OF COMPLAINT BY ANSWER.—An insufficient description of the land in a bill to quiet title may be cured by a correct description in the answer. (Page 454.)

3. JUDGMENT—MODIFICATION TO CONFORM TO COMPLAINT.—Where, in a suit to quiet title to lands, a decree for plaintiff includes a tract not claimed in the bill, the decree will be modified by omitting it therefrom. (Page 455.)

Appeal from Stone Circuit Court in Chancery.

F. M. HANLEY, Special Judge.

#### STATEMENT BY THE COURT.

This is an appeal from a decree in chancery in favor of the appellees, claiming an undivided half interest in certain lands described in the complaint of appellees, and canceling the deeds under which the appellants claimed title to the same, and quieting the title of the appellees thereto.

The bill was filed October 28, 1874, by Alexander Adler and others against the appellants. It alleges that in the year 1860 James Ivey, Jr., Aaron Hirsch, and Israel H. Adler, were tenants in common of lands therein described. That a decree in partition was made in September, 1860, at the instance of said Ivey, giving him one-third, and the said Hirsch and Adler two-thirds of the lands, and this decree was performed by

commissioners, who set apart certain of said lands to Hirsch and Adler; that said Hirsch and Adler took possession of said lands. That afterwards, on or about the 3d of June, 1867, one Andrew Allen instituted a suit in the circuit court of Independence county (wherein said lands were then situated) against the said Aaron Hirsch, by filing a declaration in debt, and causing to be issued thereon by the clerk of said court a writ of attachment against the said Aaron Hirsch, commanding the sheriff of said county to attach all and singular his goods and chattels, lands, and tenements, credits and effects, or so much thereof as should be sufficient to secure the sum of $555.16, with interest and costs of suit. That in obedience to said writ the said sheriff, on June 11, 1867, attached the lands owned by said Hirsch and Adler as the property of said Hirsch. That on January 25, 1868, said Allen obtained judgment for $921.01 and costs, and a judgment of condemnation against the said land 'so attached; that on June 26, 1867, one Thomas Cox brought a similar suit in said court against said Hirsch for $2,500, interest and costs, under which the lands aforesaid were attached, and against which a judgment was rendered on January 25, 1868, for $3,525 and costs, and said lands were condemned to be sold to satisfy said judgment. That pluries executions issued in said causes on September 20, 1869, under which, after advertisement of said sale, on November 15, 1869, said lands were sold by said sheriff at public auction to the highest bidder in different tracts,—one of the complainants, to-wit: Simon Adler, buying in, under the Allen executions, e. $\frac{1}{2}$ ne.$\frac{1}{4}$ 17, ne. $\frac{1}{4}$ se. $\frac{1}{4}$ 17, 13 north, 8 west; one Theophilus Edmonson buying in that part of sw. fractional $\frac{1}{4}$ of section 5, 13 north, 18 west, west of White river, and se. $\frac{1}{4}$ se. $\frac{1}{4}$ 16, 13 north, 8 west; said Cox buying nw. $\frac{1}{4}$ ne. $\frac{1}{4}$ 17, nw. $\frac{1}{4}$ ne. $\frac{1}{4}$ 21, ne. fractional $\frac{1}{4}$ ne. fractional $\frac{1}{4}$ 21, sw. fractional $\frac{1}{4}$ nw. fractional $\frac{1}{4}$ 16, ne. $\frac{1}{4}$ sw. $\frac{1}{4}$ 16, all in 13 north, 8 west. That under the Cox execution said Cox bought in se. $\frac{1}{4}$ ne. $\frac{1}{4}$, 21, ne. $\frac{1}{4}$ se. $\frac{1}{4}$ 21, part e. $\frac{1}{2}$ se. $\frac{1}{4}$ 6, ne. $\frac{1}{4}$ ne. $\frac{1}{4}$ 7, township 13 north, range 8 west; Asberry York bought in ne. $\frac{1}{4}$ ne. $\frac{1}{4}$ 28, se. $\frac{1}{4}$ se. $\frac{1}{4}$ 21, 13 north, 8 west; Thomas M. Hess bought in nw. fractional $\frac{1}{4}$ nw. fractional $\frac{1}{4}$ 16, sw. fractional $\frac{1}{4}$ se.

fractional $\frac{1}{4}$ 16, nw. fractional $\frac{1}{4}$ of se. fractional $\frac{1}{4}$ 16, se. fractional $\frac{1}{4}$ of nw. fractional $\frac{1}{4}$ 16, 13 north, 8 west, and James W. Butler bought in sw. $\frac{1}{4}$ se. $\frac{1}{4}$ 21, 13 north, 8 west; that the said Butler assigned his certificate to said Simon Adler. That said lands were never redeemed, and twelve months after the sale the sheriff aforesaid executed deeds to said lands so purchased as follows: To Thomas Cox, November 9, 1870, acknowledged December 9, 1870; to Thomas M. Hess December 10, 1870; to Simon Adler March '13, 1871 (the deed to Adler including the lands purchased by {Butler); to Asberry York December 10, 1870; to Theophilus Edmonson and James M. Case, his assignee, February 5, 1871. That said Cox conveyed the ne. $\frac{1}{4}$ of the ne. $\frac{1}{4}$ of 21, the nw. $\frac{1}{4}$ of ne. $\frac{1}{4}$ 21, se. $\frac{1}{4}$ ne. $\frac{1}{4}$ 21, and ne. $\frac{1}{4}$ se. $\frac{1}{4}$ 21, 13 north, 8 west, to James M. Gray. That he conveyed to Thomas M. Hess the ne. $\frac{1}{4}$ sw. fractional $\frac{1}{4}$ 16, and sw. fractional $\frac{1}{4}$ of nw. fractional $\frac{1}{4}$ 16, 13 north, 8 west. That said Israel H. Adler died March 15, 1867, leaving no children, he never having married, but the plaintiffs below as his collateral heirs. That he died seized of his half of the lands in controversy. That said Simon Adler became the administrator of his estate on January 24, 1871, by appointment of the probate court of Independence county. That no claims were filed against his estate. That thereafter the said Simon was discharged as such administrator. That no judgment had ever been obtained against said Israel H. Adler which constituted a lien upon any of his real estate. That the said purchasers, or their assigns, obtained possession of said lands at the expiration of the time for the execution of said deeds by the sheriff, and have held possession thereof ever since; and certain mesne profits are referred to as having been received by them. That said James Ivey, Jr., died June 15, 1863, leaving his widow, Paralee Ivey, afterwards Paralee Stokes, and his son James M. Ivey, his only heirs; and that William J. Bell was administrator of his estate. That of the lands so partitioned to James Ivey, Jr., the tracts described were conveyed by the administrator, under proper order of the probate court of Independence county, to James Ivey, Sr., George W. Williams, A. W. Hall, C. C. Monday, and Jno. F. Bell. That said Cox died February 3, 1871, leaving his widow, Laura

A. Cox, now Ewing, also his mother, Elizabeth Bybee, John Cox, James Cox, and Pleasant Cox, his brothers, all of whom were his heirs at law, and were non-residents of this state. That said James Ivey, Sr., died May 18, 1870, leaving Mary Ivey, his widow, William Ivey, his son, and James M. Ivey, his grandson, and Mary Ivey, his granddaughter, as his heirs; and William J. Bell became the administrator of his estate. That both of the grandchildren were minors, and that David M. Stokes had been appointed guardian of said grandson, and William A. Stafford had been appointed guardian of the granddaughter. That the widow and heirs were in possession of the land bought by said James Ivey, Sr., who denied the rights of plaintiff to any portion thereof. That the levy of the attachments in favor of Thomas Cox and Andrew Allen on the interest of Israel H. Adler as the property of said Aaron Hirsch was illegal and void. That the judgment of the Independence circuit court aforesaid, condemning said lands as the property of said Aaron Hirsch, and ordering their sale, was and is illegal and void, inasmuch as said judgment was rendered by said court whereby these plaintiffs were to be deprived of their interest in said land without notice to them, actual or constructive.

And the prayer was that the proceedings of the commissioner in the suit of Ivey *v*. Hirsch & Adler be confirmed as valid; that, if this could not be done, other commissioners be appointed in this proceeding to make partition; that an account of rents and profits be taken; that the deeds from the sheriff of Independence county to Cox, Hess, Edmonson, and Case, and from the administrator of Cox to Hess, Gray, and others, so far as they pretended to convey the interest which Israel H. Adler had in and to said lands, be canceled, and be held for naught, as a cloud upon the title of plaintiff.

To the bill of complaint, answers and cross bills were filed by W. H. Halliburton, Thomas M. Hess, William C. Case, James Case, Sis Dougherty (nee Case) and Nettie Pegg (the four last named being the heirs, and William C. Case being also administrator, of the estate of James M. Case). These agreed, in substance, in admitting the proceedings in the partition suit between Ivey and Hirsch & Adler, as shown by the exhibits to the bill;

also the suits of Allen and Cox for debt against said Hirsch & Adler, and the issuance and levy of attachments in said suits upon the real estate of said Hirsch & Adler, the rendition of judgment in said suits, the sale of the real estate levied upon, and the derivation of title to such lands as they respectively claimed under said sales,—the answers in the different cases alleging that in the year 1862 Aaron Hirsch and Israel H. Adler were engaged in the mercantile business in the town of Batesville, Ark., under the firm name of Hirsch & Adler; that during the continuance of said business by said firm they acquired the lands mentioned in the answers as partnership property; that during the continuance of said business said firm became indebted for the debts mentioned in the complaint to the said Allen and Cox as the partnership business of said firm; that Israel H. Adler died, leaving Aaron Hirsch the sole surviving partner of said firm; that the lands aforesaid were partnership assets of said firm; that the lands were sold for the satisfaction of the debts of the said firm as aforesaid; that by the death of Adler the said Hirsch became invested with the title of the partnership assets, including said lands, for the purpose of paying the indebtedness of said firm; that by said sale the parties obtained title to said lands; and that the proceeds of said sale went to satisfy the said debts of said firm. The allegations of the complaint were denied, charging that the judgments condemning said lands to be sold were void, and charging that the plaintiffs had been illegally deprived of their rights; and it was denied they had any rights to said lands. Allen was made a party, and his appearance was entered. And the answers and cross bills also set up estoppel by reason of the action of Simon Adler, one of the plaintiffs, who was present and made no objection to the sale; and they asked subrogation to the claims of Cox and Allen for the amount received out of the lands. The bar of the statute of limitations is pleaded in the answers of Hess and the Case heirs. And in all of the answers and cross bills affirmative relief is asked in the way of quieting title, and requiring conveyances by the plaintiffs.

.    In the Halliburton answer and cross bill the lands involved

seem to be sw. ¼ fractional quarter of section 16, west of
River creek, township 13 north, range 8 west, 3 acres; ne. ¼ of
ne. ¼ section 21; nw. ¼ ne. ¼ of section 22; se. ¼ of ne.¼ of
section 21, and that part of the ne. ¼ of se. ¼ of section 21,
west of Wolf bayou, containing 15 acres; the sw. ¼ of ne.¼ of
section 21, and the nw. ¼ of the se. ¼ of section 21,—all in
township 13 north, range 8 west. The two last-mentioned
tracts are not mentioned in the bill. In the Hess answer and
cross bill he claims an undivided fourth interest in that part of
the sw. ¼ fractional quarter of section 5, west of White river,
township 13 north, range 8 west, which he acquired from
W. E. Davis, administrator of Theophilus Edmondson, de-
ceased, who purchased the same as alleged in the com-
plaint; also an undivided half interest in the se. ¼ of se.
¼ of section 6, and ne. ¼ of ne. ¼ of section 7, which he pur-
chased from Urban E. Fort, administrator *de bonis non*
of estate of Thomas Cox by deed of November 6, 1875. And
he entered a disclaimer as to any other interest. The description
in the bill is "part sw. fractional ¼, section 5;" also "part e. ½ of
se. ¼, section 6, 55 acres." In the Case answer and cross bill the
lands claimed are an undivided three-fourths of that part of
the sw. fractional ¼ of section 5, west of White river, township
13 north, range 8 west, containing 54 acres, having acquired
same by descent from their father, James Case, Sr., now de-
ceased, who previously owned a half interest and afterwards
purchased an undivided fourth of same from W. E. Davis, ad-
ministrator of the estate of Theophilus Edmondson, deceased, on
the 24th day of March, 1879, who purchased same as alleged in
the complaint; also they claimed all of se. ¼ of se. fractional ¼,
section 16, township 13 north, range 8 west, containing 16.85
acres, and they entered a disclaimer as to any other lands.

The testimony of Simon Adler and the exhibits thereto
were introduced by complainants, in addition to the exhibits
already mentioned, and the depositions of Thomas M. Hess and
W. C. Case on the part of defendants, in addition to the ex-
hibits thereto. Simon Adler testified that Israel H. Adler died
March 15, 1867, leaving the plaintiffs as his heirs; that all of
these were still living; that Hirsch & Adler were partners in

the mercantile business at Batesville, Ark.; that he (deponent) was administrator of his estate; that the estate was finally wound up, and he was discharged; that Andrew Allen and Thomas Cox brought proceedings against Hirsch, and they obtained judgments; and that he regarded the sales thereon as being only of Hirsch's interest. Hirsch and Adler each had a half interest in the lands. On cross examination he said that Aaron Hirsch had failed after the war; that neither Allen nor Cox had ever probated their claims against the estate of Adler; that their debts were paid by the sale of the lands under their judgments against Hirsch. There are some exhibits showing letters of administration, settlement and discharge. The discharge was at November term, 1877.

Thomas M. Hess testified that the land he had been sued for in the bill in section 16 belonged to Binks Hess, to whom he had conveyed it prior to the commencement of this suit. It was in March, 1870. Has a one-fourth interest in the land. Has an interest in 54 acres of land. It is southwest fractional quarter of section 5, township 13 north; range 8 west. He and James Case bought jointly a half interest. Case and Edmondson had owned the whole section 5 jointly, and when Edmondson died, his estate was insolvent, and witness bought of his administrator. Deed is exhibited, dated March, 24, 1879. Has held possession of this land ever since, and claimed it as as his own. Is in possession now. Has been renting it out ever since the purchase. He supposes other land involved in the suit which he owns is land in section 6, 13 north, range 8 west. It was bought at the Cox sale. A certificate of purchase was first made, and twelve months afterwards a deed. The lands mentioned were se. $\frac{1}{4}$ se. $\frac{1}{4}$ section 6; and ne. $\frac{1}{4}$ ne. $\frac{1}{4}$ section 7, township 13 north, range 8 west. The deed is dated February 7, 1877. The lands are in Stone county. Has rented this land out since the date of deed. Owns one-half interest in it now. This possession has been open and notorious and adverse to everybody else. He knew Aaron Hirsch and Israel H. Adler. They were partners, and carried on business at Batesville under the firm name of Hirsch & Adler. He attended the sale of their lands by the sheriff of Indpendence

county.    Theophilus Edmondson bought in 54 acres mentioned in section 5, township 13 north, range 8 west, and the 40 acres in section 6, and the 40 acres in section 7, township 13 north, range 8 west, were bought in by Thomas Cox.    Saw Simon Adler there.    Did not hear him make any objection to sale.    Would have heard it had he made any.    Edmondson conveyed half the land bought to James Cox, because he was not able to pay for all of it, and the deed was made by the sheriff to them.    Conveyed to each a half interest.    The heirs of Case own three-fourths interest in the 54 acres in said section 5,—one-half interest so obtained, and afterwards another quarter interest was obtained from Edmondson, administrator.    They have had possession of their land ever since it was purchased, cultivating or renting it.

W. C. Case testified:    James Case was his father, and his co-defendants in the answer were his brothers and sisters.    His father, and his brothers, sisters, and himself, and Mr. Hess, had been in possession of the lands mentioned ever since they were purchased, either cultivating or renting them out.    Everybody knew this.    His father had six children, James Case, William C. Case, Sis Dougherty, Nettie Pegg, Mrs. S. E. Martin, and Armity Gray.    Witness had bought Armity Gray's interest, and George Dougherty had bought Mrs. Martin's.

Thomas M. Hess recalled:    Testified that Halliburton had purchased that land that James Gray had bought in; that Gray had sold to James Case; and Case had sold to John Bell; and John Bell had sold to Halliburton.

A decree was rendered against all of the said defendants for an undivided half interest in the land set forth in the said answers and cross bills.    Appeal here is prayed from this decree by W. A. Halliburton, T. M. Hess, W. C. Case, James Case, Jr., Sis Dougherty, and Nettie Pegg.

*J. C. Yancey* and *Morris M. Cohn*, for appellants.

A surviving partner may be sued individually for a firm debt.    1 Abb. Forms of Pledg. 60[1].    Though not necessary, it is the better practice to state the surviving partner's character.    1 Abb. Forms of Pledg. *supra;* 70 N. Y. 180, 189, 190; 51 N. Y. Sup. Ct. 96; 17 N. W. 447, 448; 35 Ia. 306.    Even

if this were not true, the objection could not be raised collaterally. 24 Ark. 122; 34 Ark. 399; 37 Ark. 155; 52 Ark. 1. Until the partnership creditors were paid, and the individual interest of the surviving partner ascertained, his heirs had no rights in the property. 16 Ark. 616; 19 Ark. 443; 26 Ark. 134; *ib.* 154; 54 Ark. 395; 27 Mich. 537. The judgment against the surviving partner is binding on the partnership assets. 18 Ia. 19; 4 Nev. 437; 41 Tex. 193; 7 W. & S. 143; 10 Wend. 630; 17 S. & R. 456; 156 U. S. 218, 232; 118 U. S. 3, 8. The surviving partner had the right to sell the realty to pay plaintiff debts, and a court of equity will protect his vendees. 2 Sandf. Ch. 366; 1 Russ. & M. 45; 1 Myl. & K. 649; 3 *id.* 443; 8 Sim. 429; 11 *id.* 498 n.; 21 Ala. 437; 17 Cal. 262; 104 U. S. 19, 22, 24; 49 Fed. 183, 185; 135 U. S. 621, 625; 54 Ark. 395, 398; 5 Metc. 562; 65 Ark. 290; 118 U. S. 3; 51 Ark. 56, 59. On the doctrines of subrogation, see: Sheldon, Sub. chap. 1; 29 Ark. 47; 50 Ark. 361; 38 Ark. 385; 41 Ark. 149; 42 Ark. 77; 42 Ark. 100; 42 Ark. 140; 55 Ark. 30; 43 Ark. 469; 45 Ark. 149; 47 Ark. 421; 52 Ark. 1; 52 Ark. 499; 53 Ark. 545; 54 Ark. 273; 56 Ark. 563; 56 Ark. 574. Description of land as "part of the southwest fractional quarter section 5" is not sufficient. Newm. Pl. & Pr. 446. Appellees are barred by laches. 19 Ark. 16; 17 Fed. 36; 120 U. S. 377, 387; 124 U. S. 183, 188, 189; 145 U. S. 368; 150 U. S. 193; 137 U. S. 556, 566; 148 U. S. 360; 145 U. S. 214; 149 U S. 287, 294; 148 U. S. 360, 370; 124 U. S. 183, 188. Estoppel also bars them. 10 Ark. 211; 24 Ark. 371; 33 Ark. 465; 36 Ark. 663; 51 Ark. 235; *ib.* 491; 35 Ark. 293; 52 Ark. 389; 47 Ark. 226; *ib.* 301; 48 Ark. 258; 30 Ark. 453.

*Robert Neill*, for appellees.

On the death of Israel Adler the descent of his interest in the partnership really was cast upon his heirs. Sand. & H. Dig., § 2470; 5 Ark. 608; 8 Ark. 8. There being no evidence to show that the lands were partnership lands, the presumption is that they were held in common. Sand. & H. Dig., § 704. The judgment against the surviving partner and the sale thereunder passed only his interest in the partnership realty. If the

creditors wished to reach the interest of the deceased partner, they should have forced the surviving partner to exercise his right of sale in their favor. 42 Ark. 422; 78 Ky. 33; 104 U. S. 18; Story, Part. § 347. In the attachment suits the court acquired no jurisdiction over any other property than that attached. Act March 7, 1867, chap. 17; 38 Ark. 194. The only claim that the surviving partner could make to the land of the deceased partner was as trustee for himself and the creditors. 17 Am. & Eng. Enc. Law, 1154; 38 Cal. 389; 21 Ala. 442; 76 Ala. 505; 82 Ala. 198. The rule of *caveat emptor* applies to the sale in this case. 10 Ark. 211; 31 Ark. 258; 5 Metc. 580. There was no estoppel. 10 Ark. 211. Attachment sales are not judicial sales. 52 Ark. 290.

*J. C. Yancey* and *Morris M. Cohn,* for appellees in reply.

Partnership property is regarded as a trust fund for the benefit of partnership creditors. 119 N. Y. 465; 65 Ark. 292, 293. A creditor is subrogated to the partner's rights in his deceased partners' property. 42 Ark. 423. A purchase at execution sale is the equivalent of a voluntary conveyance in such a case as this. 42 Ark. 452. Courts of equity aid the process of law courts, where property fraudulently conveyed or property of an equitable nature is sought to be reached under legal process. 33 Ark. 328; 43 Ark. 84; 46 Ark. 537; 56 Ark. 476; 104 U. S. 19. The doctrine of *caveat emptor* has no application. The purchasers at the sale are entitled to subrogation to the rights of the firm creditors. 56 Ark. 563; 56 Ark. 574; 47 Ark. 421; 52 Ark. 1; 54 Ark. 273; 50 Ark. 361.

HUGHES, J., (after stating the facts.) It appears that the lands in controversy are claimed by the appellees, as heirs of Israel H. Adler, deceased, who in his lifetime was a partner of Aaron Hirsch. The appellants claim under a sale of these lands by virtue of pluries executions at law, issued on a judgment at law, rendered, as they claim, against Aaron Hirsch as surviving partner of Hirsch & Adler, for the recovery of a partnership debt. The suits in which these judgments were rendered were commenced by actions of debt, in which attachments were issued and levied upon the lands of Aaron Hirsch. Only constructive

service was had upon Aaron Hirsch, and no personal judgment was rendered against him. The judgments were rendered against "the defendant," without further designation or description. The lands were attached "as the property of the said Aaron Hirsch." The writ of attachment directed the attachment of Aaron Hirsch (of the late firm of Hirsch & Adler) by all and singular his goods, chattels, lands and tenements, and contained a summons, which commanded the sheriff to summon Aaron Hirsch (of the late firm of Hirsch & Adler) to be and appear etc. The declaration was upon a joint and several obligation of Hirsch and Adler, and stated: "Your petitioner, Andrew Allen, the plaintiff in this cause, states that he is the legal owner of a note against the defendant Aaron Hirsch and Israel H. Adler, late merchants and partners doing business by the firm name and style of Hirsch & Adler (the said Israel Adler, deceased, not sued herein) etc. The execution commanded the sheriff to cause to be made the debt recovered against "the said Aaron Hirsch."

Without discussing the various questions raised in this case, suffice it to say that the court is of the opinion that all the proceedings in the causes against Aaron Hirsch by Allen & Cox, in which the sales of the lands in controversy are claimed by appellants to have been made, were had against Aaron Hirsch in his individual capacity, and not against him as surviving partner of Hirsch & Adler, and there were no judgments in said causes that bound the estate or authorized a sale of Adler's interest in said lands, or any interest other than that of Aaron Hirsch, which was the only interest seized under the writ of attachment, and commanded by the court to be sold. Aaron Hirsch was proceeded against individually in the complaints upon which the attachments were issued, was constructively summoned only, and no personal judgment was or could have been rendered against him. The ground in the affidavits for the attachments was that Hirsch was a non-resident of the state. The court finds that the appellees were not estopped nor barred by limitations or laches; also that the appellants were not entitled to be subrogated.

We find that the sw. ¼ of the nw. ¼ of section 21, which

was included in the decree in favor of appellees, is not claimed by them in their complaint; but the nw. ¼ of the sw. ¼ of section 21, (both in township 13 north, range 8 west) is in the bill.    The bill of complaint described one piece of land claimed as a part of the sw. fractional ¼ of section 5, containing 54 acres, being a part of the land for which Hess was sued.    This description is defective, but the answer of Hess described it as "that part of sw. fractional ¼ of section 5, west of White River, containing 54 acres," and having been acquired 24th of March, 1879, from W. E. Davis, administrator of Theophilus Edmondson, who purchased the same, as is alleged in the complaint; thus curing the defect in the description, and identifying this tract as part of the lands claimed by both plaintiffs and defendants to be part of the lands of Hirsch & Adler.    We think the statement of the answer in regard to se. ¼ of the se. ¼ of section 6 cures the misdescription of this piece in the complaint.

The object of the suit of appellees is to obtain a clear title to an undivided half on the lands held by Hess and the Case heirs that belonged to Hirsch and Adler, and to have a partition and division of said lands.

We think the claims of Hess are covered by their title to an undivided half.    The decree is affirmed except as to the sw. ¼ of the nw. ¼ of 21, not claimed in the bill of complaint, as to which the decree is modified by leaving this piece out.