B. BRYAN LAREY, COMMISSIONER OF REVENUES v.
CONTINENTAL SOUTHERN LINES, INC. ET AL

5-4325                                          419 S. W. 2d 610

Opinion delivered October 23, 1967

*Tom Tanner,* for appellant.

*Smith, Williams, Friday & Bowen,* and *Harper, Young, Durden & Smith,* for appellee.

JOHN A. FOGLEMAN, Justice. The question to be determined on this appeal is whether Ark. Stat. Ann. § 75-1251 (Supp. 1965) [Section 11, Chapter 2, Act No. 40 of the Acts of the First Extraordinary Session of the General Assembly of 1965] is constitutional. The action was brought against the Commissioner of Revenues of the State of Arkansas[1] by appellees, all of whom are in the business of transporting passengers and goods,

---

[1]The action was instituted against Doris McCastlain, then Commissioner of Revenues, but B. Bryan Larey, her successor, was substituted as a party to the action, on his motion, on the date the decree was rendered.

for hire, in interstate commerce to and through Arkansas by motor buses which use special distillate fuels. Each of them filed reports, showing the mileage traveled, on forms prescribed by the Commissioner of Revenues of the State of Arkansas. Upon the basis of these reports, but under protest, each of the appellees paid taxes on the special distillate fuel used at the rate of 8½ cents per gallon on the number of gallons indicated by assuming that each of the appellees used one gallon for each five miles traveled pursuant to the section questioned. Appellees' suit was to recover all that portion of the tax paid by each in excess of 8½ cents per gallon used, with interest from date of payment. They allege that each of them maintained an average consumption of less than the amount determined by statute. The case was tried upon a stipulation of facts. In pertinent part, the stipulation was as follows:

"1.  * * * There are intrastate carriers (bus companies) engaged in the identical business and competitive with the Plaintiffs over certain routes.

2.  The plaintiffs and the intrastate bus companies operate motor vehicles which primarily use diesel engines for propulsion.

3.  The intrastate bus companies pay an excise tax of $.085 per gallon on all distillate special fuels purchased by them either at the time delivered to their storage facilities for later use or when purchased from a retailer for delivery directly into the motor vehicle's tank.

4.  The Plaintiffs, as interstate bus companies, submit a monthly report to the Defendant itemizing the quantity of fuel purchased and mileage traveled in Arkansas during the preceding month. With respect to the distillate special fuel imported into Arkansas and used for operation of a motor vehicle, the Plaintiffs pay $.085 per gallon based on the presumption that their motor vehicles consume one gal-

lon of fuel for each five miles traveled. The greater part of the fuel used is imported into Arkansas in the tanks of the vehicles.

5. All of the Plaintiffs obtain more than five miles of travel for each gallon of special distillate fuel consumed. The Plaintiff, Continental Southern Lines, Inc., maintains an average of 6.3 miles per gallon and this is representative of the fuel consumption of the Plaintiffs as a group. The intrastate carriers have comparable consumption standards.

6. An intrastate bus company which obtains 6.3 miles per gallon pays a tax of $.0135 per mile of travel. A Plaintiff maintaining the same consumption pays a tax of $.017 per miles of travel."

The chancellor rendered judgment for appellees with interest at the rate of 6% from date of payment of the tax until they are paid. He also enjoined appellant from attempting to enforce § 75-1251 in such a manner as to result in the collection of the distillate fuel tax in an amount exceeding 8½ cents per gallon.

The third paragraph of § 75-1251 reads as follows:

"For the purpose of determining whether a distillate special fuels user is entitled to a refund or a refund credit, or owes the State of Arkansas tax on distillate special fuels used in this State, as provided hereinabove, the number of gallons of distillate special fuels used in this State shall be determined by the Commissioner of Revenues on the basis of five (5) miles per gallon of distillate special fuels. The Commissioner may make appropriate rules and regulations to assure accuracy in the reporting of such mileage and to prevent violations thereof."

Appellees contended and the trial court found that the section was unconstitutional in that it is arbitrary,

unreasonable, a burden on interstate commerce and discriminatory against interstate carriers in violation of Article 2, § 3 and Article 16, § 5 of the Constitution of Arkansas, and Article 1, Section 8, Cl. 3, Article 4, Section 2, Cl. 1 and Amendment Fourteen, Section 1 of the Constitution of the United States.

Under the facts in this case, we find that the paragraph above quoted from § 75-1251 is unconstitutional as a burden upon interstate commerce, in violation of Article 1, Section 8, Cl. 3 of the United States Constitution.

There is nothing in this record or in Act No. 40 to indicate that the five mile per gallon basis was other than arbitrary. It is stipulated that an average of 6.3 miles of travel per gallon of special distillate fuel is representative of the fuel consumption of appellees and of intrastate carriers. This means that a tax of 8½ cents per gallon is paid by intrastate carriers at the time they purchase gasoline in the state, while interstate carriers who purchase their fuel at a point outside Arkansas pay tax on the fuel used in Arkansas at the rate of 10.71 cents per gallon. Thus, whether the tax be figured upon a gallonage basis or a mileage basis, the interstate carriers pay 1.26 times the tax paid by an intrastate carrier. The only way the interstate user can avoid this inequality is by buying all his fuel in Arkansas. However desirable this might be from the standpoint of the economy of the State of Arkansas, this discrimination in favor of the intrastate operator violates the constitutional standards for interstate commerce. *Halliburton Oil Well Co.* v. *Reily*, 373 U. S. 64, 83 S. Ct. 1201, 10 L. Ed. 2d 202.

Appellant urges that since this tax is an excise tax on a privilege,[2] the legislature may make reasonable classifications for the purpose of taxation which must

---

[2]See *Sparling* v. *Refunding Board*, 189 Ark. 189, 71 S. W. 2d 182, where it is held that the tax is a privilege tax for the use of the highways.

be upheld by the courts unless the classification is clearly unreasonable and arbitrary and without just distinction as a foundation. While we agree with the general statement, appellant has not cited any case, nor do we know of any, where any court has held that a classification based solely upon a distinction between intrastate and interstate commerce has been upheld as reasonable or appropriate. Cases such as *Vaughan* v. *City of Richmond*, 165 Va. 145, 181 S. E. 372, cited by appellant, upholding the imposition of higher license taxes on businesses of nonresidents than on businesses of residents have no application here. There the higher licenses were said to be justified because it was shown that residents were taxed in ways which the nonresidents wholly escaped. Nonresidents of the City of Richmond who resided in the State of Virginia were charged the higher rate in that situation, so the commerce clause was not involved. To afford equal protection of the laws, required by Amendment Fourteen to the United States Constitution, such classification must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly situated shall be treated alike. *Royster Guano Co.* v. *Commonwealth of Virginia*, 253 U. S. 412, 40 S. Ct. 560, 64 L. Ed. 989. Equality for the purposes of competition and the flow of commerce is measured in dollars and cents and not legal abstractions. *Halliburton Oil Well Co.* v. *Reily*, 373 U. S. 64, 83 S. Ct. 1201, 10 L. Ed. 2d 202.

The commerce clause of the United States Constitution forbids discrimination whether forthright or ingenious. *Best & Co.* v. *Maxwell*, 311 U. S. 454, 61 S. Ct. 334, 85 L. Ed. 275.

The Supreme Court of the United States has held privilege taxes or license fees unconstitutionally discriminatory against interstate commerce in cases where the corresponding taxes or fees paid by those in intrastate commerce only are substantially less. *Best & Com-*

*pany* v. *Maxwell, supra; Memphis Steam Laundry Cleaner* v. *Stone,* 342 U. S. 389, 72 S. Ct. 424, 96 L. Ed. 436; *West Point Wholesale Grocery Co.* v. *Opelika,* 354 U. S. 390, 77 S. Ct. 1096, 1 L. Ed. 2d 1420. It has also been held that equal treatment for in-state and out-of-state taxpayers is a condition precedent to valid use taxes on imported goods. *Halliburton Oil Well Co.* v. *Reily, supra.*

This court has long recognized that privilege taxes on acts which are part of the processes of interstate commerce must be calculated so that in their practical effect they will not substantially discriminate in favor of comparable activities in intrastate commerce which compete economically with the interstate activities that are taxed. *Nicholson* v. *Forrest City,* 216 Ark. 808, 228 S. W. 2d 53.

Although our fuel tax is a privilege tax, it can be sustained as to those in interstate commerce, not as a tax, but as reasonable compensation for the use of our highways. As such, the measure of compensation exacted from an interstate carrier must have a reasonable relationship to the use which the carrier makes of the highways. *Dixie Greyhound Lines, Inc.* v. *McCarroll,* 101 F. 2d 572 (8th Cir.) affirmed 309 U. S. 176, 60 S. Ct. 504, 84 L. Ed. 683.

In an effort to sustain the classification, appellant urges that the cost of collection of the tax is greater where the interstate user is involved than it is where the intrastate user is involved. Appellant cites us no authority sustaining this position, but it is unnecessary for us to determine whether this difference might constitute a proper basis for classification since we have nothing before us to indicate that this cost bears any relationship whatever to the resulting difference in the tax collected.

We do not mean to say that any act basing the tax to be paid by one in interstate commerce upon a deter-

mination of gallonage consumption based upon a fixed mileage per gallon factor arrived at upon an appropriate factual basis would necessarily be unconstitutionally discriminatory. The determination of that constitutional question is not necessary to our decision, since under the stipulated facts, the result here is obviously an improper burden on interstate commerce.

There are two particulars in which the decree of the trial court is erroneous, and it must be modified. That decree stated that all of § 75-1251 was unconstitutional. We find no basis for this holding as to the first two paragraphs thereof. Obviously, this was inadvertently said as there is no question raised except as to the third paragraph. The court also allowed interest on the amounts to be refunded. As an attribute of sovereignty, the state is not liable for interest in any case, unless it has by statute made itself liable, or authorized a contract providing for the payment of interest. *State* v. *Thompson,* 10 Ark. 61; *Jobe* v. *Urquhart,* 102 Ark. 470, 143 S. W. 121. In the latter case, the court held a contract entered into by the Board of Commissioners of the State Penitentiary providing for the payment of interest was void and reversed and dismissed a judgment for interest. In discussing the possible moral obligation of the state to pay interest, this court there said:

"In the next place, it does not lie within the province of the courts to speak for the State and determine and enforce her moral obligations. The courts are not the keepers of the conscience of the State. The honor and integrity of the State or sovereignty are lodged in the people—her citizens and the subjects—and in turn the honor and integrity of her people are reflected through the Legislature of the State. The people or sovereignty speak by legislative enactment, and on all questions involving the moral obligation of the State, the Legislature is the sole and exclusive tribunal to determine and adjust such matters. * * * "

While appellant does not raise either of these questions, this is a matter of public interest. Since the trial here is a trial de novo, we may enter such judgment as the chancery court should have entered upon the undisputed facts in the record. *Baxter County Bank* v. *Copeland*, 114 Ark. 316, 169 S. W. 1180; *Pickett* v. *Ferguson*, 45 Ark. 177. When a chancery decree grants relief to which an appellee is clearly not entitled on the record, this court will modify the decree to omit the excessive relief. *Hess* v. *Adler*, 67 Ark. 444, 55 S. W. 843. When it appears that a portion of a chancery decree is inadvertently inserted, this court may modify the decree by striking out that portion. *City of Ft. Smith* v. *Mikel*, 232 Ark. 143, 335 S. W. 2d 307. In view of the lack of power of the courts to recognize a moral obligation of the state, the action of the trial court in rendering a judgment for interest is in excess of its jurisdiction. When a trial court enters an order without jurisdiction over the subject matter, the question cannot be overlooked even if not raised. *Sibley, Receiver* v. *Leek*, 45 Ark. 346.

The decree of the chancery court is modified to declare only the third paragraph of § 11, Chapter 2, Act No. 40 of the First Extraordinary Session of 1965 unconstitutional as being in violation of Article 1, Section 8, Cl. 3 and Amendment Fourteen of the Constitution of the United States and to eliminate the clause adding interest on the recovery of each appellee at the rate of 6% from the date of payment until paid.

The decree is affirmed as modified.