IN THE MATTER OF THE ADOPTION OF Angela
Michelle PERKINS/POLLNOW

89-158                                   779 S.W.2d 531

Supreme Court of Arkansas
Opinion delivered November 13, 1989

*Jack, Lyon & Jones, P.A.*, by: *John W. Fink*, for appellants.

*Dodds, Kidd, Ryan & Moore*, by: *Donald S. Ryan*, for appellees.

JACK HOLT, JR., Chief Justice. This is an adoption case. Jurisdiction is pursuant to Ark. Sup. Ct. R. 29(1)(c).

The appellants, Jim and Wilma Pollnow, assumed care and control of Angela Michelle Perkins/Pollnow in the summer of 1986 and became her legal guardians on September 17, 1986, when she was seventeen months old. Angela's mother and father consented to the guardianship.

In November 1988, appellee, Jackie Perkins, filed a petition to adopt Angela in the Probate Court of Pulaski County. (In accordance with Ark. Code Ann. § 9-9-204(4)(iii) (1987), her husband, Calvin Perkins, was not required to join in the petition since he was on active duty in the United States Air Force.) The Perkinses previously had adopted two other children with the same biological parents as Angela. The Pollnows filed a counter-

petition for adoption. Both petitions were heard on February 27, 1989. By interlocutory decree dated March 1, 1989, which specified that it became final on the same date, the court granted adoption to the Perkinses, finding that it was in Angela's best interest that she be adopted by the Perkinses based upon the public policy that siblings should be raised together and upon the court's determination that the Perkinses were morally fit and physically able and suitable to provide for the nurture and care of the minor child. From this order, the Pollnows appeal.

For reversal, the Pollnows contend that the trial court wrongly granted the adoption to the Perkinses based on the fact that the Perkinses had previously adopted Angela's biological siblings, that the court's decision is not in the best interest of the child, and that the court wrongly granted the Perkinses a final decree of adoption. We affirm as modified.

The Pollnows claim that the court was wrong in considering the fact that the Perkinses had previously adopted Angela's biological siblings, Michael and Amber Perkins, in that all legal relationships between Angela and her siblings were terminated under Ark. Code Ann. § 9-9-215(a)(1) (1987) when the Perkinses adopted the siblings. We disagree.

■ Ark. Code Ann. § 9-9-215(a)(1) provides in pertinent part that a final decree of adoption terminates "all legal relationships between the adopted individual and his relatives, including his natural parents, so that the adopted individual thereafter is a stranger to his former relatives for all purposes . . . ."

In *Wilson* v. *Wallace*, 274 Ark. 48, 622 S.W.2d 164 (1981), this court held that the trial court erred in granting visitation privileges to biological grandparents of an adopted child inasmuch as a final decree of adoption terminates all legal relationships between the adopted individual and his relatives, "so that the adopted individual thereafter is a stranger to his former relatives for all purposes." In doing so, we stated that "[i]t was unquestionably within the province of the legislature to decide that the reasons favoring the solidarity of the adoptive family outweigh those favoring grandparents and other blood kin who are related to the child through the deceased parent."

■■ The basic rule of statutory construction, to which all

other interpretive guides are subordinate, is to give effect to the intention of the legislature. *Hice* v. *State*, 268 Ark. 57, 593 S.W.2d 169 (1980). *See also Stover* v. *Stover*, 287 Ark. 116, 696 S.W.2d 750 (1985). The clear intention of the legislature in enacting this provision was to strengthen the adoptive family against interference from blood kin. Consideration by a probate court of the fact that children in the adoptive family are biological siblings of the child to be adopted does nothing to disturb this legislative goal. Furthermore, uniting biological siblings in an adoptive home likely strengthens, rather than weakens, the home. Simply put, the code provision does not pertain to the case at bar.

The Pollnows also argue that the probate court's decision is not in the best interest of Angela.

██ Ark. Code Ann. § 9-9-214(c) (1987) permits a probate court to grant a petition for adoption only if such adoption is in the best interest of the child to be adopted. *See Dixon* v. *Dixon*, 286 Ark. 128, 689 S.W.2d 556 (1985). While this court reviews probate proceedings *de novo* on the record, we will not reverse a probate court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the trial court to judge the credibility of witnesses. *Id*. Personal observations of the court are entitled to even more weight in cases involving the welfare of a young child. *See Wilson* v. *Wilson*, 228 Ark. 789, 310 S.W.2d 500 (1958).

The trial court was presented the following scenario as to the child and parties in litigation: The appellants, Wilma Jean and James Pollnow, live in Little Rock, Arkansas. Wilma is forty-eight years old; James is fifty-three years old. Wilma's sixteen-year-old daughter lives with them. The Pollnows reside at their two-story, five-bedroom home, and at the Dorcas home, a halfway house for battered women. They spend an equal amount of time at both residences. Wilma earns take-home pay of approximately $1200 a month from her job as director of the Dorcas house; James earns take-home pay of about $2000 per month from his employment with the Air National Guard. He is currently involved in a Chapter 13 bankruptcy.

Angela, who is now three years old, is enrolled in the Child Development Center in Little Rock. She is involved in gymnas-

tics, swimming, tap, ballet, and music and is learning horseback riding at the Pollnows' farm. She has her own room and playroom at the Pollnows' home and lives in a room with the Pollnows at the Dorcas house.

Dr. Wrenda Gallien, an assistant professor of child and adolescent psychiatry at the University of Arkansas Medical Center, testified that Angela is a very smart, precocious little girl, much more advanced than the average three-year-old, and that she appears to have been receiving appropriate training and guidance. She also stated that she would be very concerned about taking any child and placing it with new caretakers, the effect of which can be "devastating." Angela is aware that she has a brother and sister.

Linda Walker, an employee of KTHV, testified that Angela is happy, outgoing, and well taken care of by the Pollnows.

The appellees, Calvin and Jackie Perkins, live in Knob Noster, Missouri. They have been married for ten years. Calvin, who is thirty-four years old, is a sergeant in the United States Air Force. He earns take-home pay of approximately $1400 a month. Jackie, who is thirty-two years old, is a housewife. The Perkins reside in a four-bedroom house at the Whiteman Air Force Base.

The Perkinses adopted Amber, who is now six years old, when she was sixteen months old. They adopted Michael, who is now two years old, when he was six weeks old. The Perkinses first saw Angela when she was nine months old. Angela and her biological mother lived with the Perkinses prior to midsummer 1986. Jackie has not seen Angela in one year; Calvin has not seen her in two years.

Angela's biological father testified that it would be in Angela's best interest for the Perkinses to adopt her. Angela's biological mother testified that she had visited with her other children who have been adopted by the Perkinses and she is satisfied with how they are progressing. She also stated that the Dorcas house is not a good place for a three or four year old girl since it is not a stable family environment but a home for abused women.

■ Undoubtedly, both the Perkinses and Pollnows, as the probate court found, have the "facilities and resources suitable to

provide for the nurture and care" of Angela. However, the trial court found that it was in the best interest of Angela that she be adopted by the Perkinses. In light of the facts before us, we cannot say that this finding is clearly against the preponderance of the evidence. *Dixon, supra.*

Finally, the Pollnows contend that the court wrongly granted the Perkinses a final decree of adoption in that the decree was entered before Angela had lived in the adoptive home for six months.

■ The trial court granted the Perkinses' petition for adoption by interlocutory decree of March 1, 1989. The last sentence of the decree provided: "This Interlocutory Decree shall become a final Decree of Adoption on the *1 (handwritten)* day of *March (handwritten)*, 1989." (Emphasis added.) On March 1, 1989, Angela had spent no time in the Perkinses' home subsequent to the filing of their petition.

Ark. Code Ann. § 9-9-213 (1987) provides:

> A final decree of adoption shall not be issued and an interlocutory decree does not become final until the minor to be adopted, other than the stepchild of the petitioner, has lived in the adoptive home for at least six (6) months after placement by an agency or for at least six (6) months after the petition for adoption is filed.

■ According to counsel for the Perkinses, he erroneously filled in the date that the decree was to become final as March 1, 1989, instead of the proper date, September 1, 1989. Since we review probate cases *de novo*, we may enter such judgment as the probate court should have entered upon the undisputed facts in the record. *See Larey, Comm'r v. Continental Southern Lines*, 243 Ark. 278, 419 S.W.2d 610 (1967); *Covell v. Bailey*, 296 Ark. 397, 757 S.W.2d 543 (1988). Where it appears that a portion of a decree is inadvertently inserted, this court may modify or correct the decree. *Larey, Comm'r, supra.* Accordingly, we modify the decree to reflect that it shall become a final decree of adoption as of September 1, 1989.

Affirmed as modified.

HAYS and NEWBERN, JJ., concur.

DAVID NEWBERN, Justice, concurring. At the conclusion of the adoption hearing, the probate court stated the following:

> After reflecting on all the evidence here, there is absolutely nothing wrong with either of the parties, their home environment and what have you, but it's been the policy of the Supreme Court and this Court, in the past, that when we have children — brothers and sisters, siblings, that is its in their best interest that they know these people, that they grow up with them. And one of these days, having the type of natural parents they've had, they're going to have to rely on one another as having the only family they have besides their adoptive parents.

> In my opinion, since it is public policy and the parents — nothing wrong with either one of these households. I think the Pollnows have done an excellent job. Things should have happened before this. There should have been some petitions filed earlier. We've let this thing get too far, but it's not too far or too late to correct, and I am going to place the custody of this child for adoption with the Perkins[es] because they can — they have the other brothers and sisters and it's only fair that these children grow up to know one another, since it's all they have. That'll be the order of the court.

Here are the findings of fact made by the probate court:

> A. That Petitioners Jackie Perkins and Calvin Perkins; Wilma Pollnow and James Pollnow, both have the facilities and resources suitable to provide for the nurture and care of the minor child to be adopted.

> B. That Jackie Perkins and Calvin Perkins are presently the adoptive parents of Amber Perkins, born February 3, 1983, and John Perkins, born April 25, 1986. Amber Perkins and John Perkins are siblings of Angela Perkins.

> C. That it is in the best interest of Angela Michelle Perkins, that she also be adopted by Jackie Perkins and Calvin Perkins. This is based on the public policy that sibling children should be raised together rather than separately.

The probate court clearly found that there was nothing wrong with either of the homes of the petitioners seeking to adopt the child. The operative finding of the court in determining the best interests of the child was that it should be with its siblings because of "public policy" to that effect. No authority was cited by the trial court for that proposition, and I can find none. This court discussed it a little in *Fries* v. *Phillips*, 189 Ark. 712, 74 S.W.2d 961 (1934), where we affirmed a result which separated a brother and sister. We noted the "forceful" argument that the two children should be brought up together, but, in declining to be persuaded by it, we pointed out the children involved had already been separated for a long time and did not know each other.

There is a line of Missouri appellate court cases, exemplified by *In the Interest of M.L.S.* v. *C.S.*, 710 S.W.2d 452 (Mo. App. 1986), and *In re G———*, 389 S.W.2d 63 (Mo. App. 1965), in which keeping siblings together is discussed in the context of adoption and the best interests of the child, but it is only one consideration. I find no other cases even discussing the matter, and I have concluded that there is no public policy which favors keeping siblings together, but that it is merely one consideration in determining the best interests of the child.

It is apparent to me that this court's opinion amounts to a de novo review of the evidence and a finding that the Perkins's home is more suitable for Angela than that of the Pollnows. I disagree with any such finding. It is clear that the Pollnows have, as the probate court stated, done an "excellent" job with Angela. The judge apparently did not believe or credit witnesses who testified about an argument the Pollnows allegedly had in Angela's presence. Nor, apparently, did the judge believe or put any emphasis on testimony that Dorcas House was not a proper place for Angela to be. Rather than ignore the trial judge's evaluation of the witnesses, we should defer to it. *Perry* v. *Nicor Exploration*, 293 Ark. 417, 738 S.W.2d 414 (1987); *Milligan* v. *General Oil Co., Inc.*, 293 Ark. 1, 738 S.W.2d 401 (1987).

I would vote to reverse in this case had the Pollnows argued the probate court gave undue weight to the siblings consideration. The only evidence in the record on the point is the testimony of a psychiatrist who said that it was not important to Angela's wellbeing that she be placed with her siblings and that removal of

Angela from the Pollnows who had been Angela's guardians since September 17, 1986, would be very detrimental to her. The hearing in this case was held on February 27, 1989. Angela had thus lived with the Pollnows only a few days less than two and a half years.

The Perkins's argument on the siblings point is that Ark. Code Ann. § 9-9-215(a)(1) (1987) prohibits the court from considering keeping siblings together. I agree with this court's opinion that it does not. The tragedy of the case, however, lies in the fact that Angela was removed from the only real home she had known. Now that she has been with the Perkinses almost nine months, we would probably exacerbate the problem and increase her disorientation by reversing the probate court's decision.

This court bears heavy responsibility in this matter because on October 3, 1988, we refused to stay the probate court's mandate until this case could be heard on appeal. The probate court addressed the removal problem only to the extent of saying that adoption petitions should have been filed sooner. This court's opinion addresses it not at all. My reason for writing this concurring opinion is to express my hope that in the future probate courts will not find public policy without authority and that this court will not make the mistake of refusing to stay an adoption order, which will remove a child from a home of long duration, until the appeal is decided.

HAYS, J., joins in this concurrence.