[No. 41578.   En Banc.   May 13, 1971.]

H & B Communications Corporation, *Appellant*, v. The City of Richland, *Respondent*.

*Sherwood, Tugman, Gose & Reser*, by *William M. Tugman*, for appellant.

*Critchlow, Williams, Ryals & Schuster* and *Rembert Ryals*, for respondent.

*Slade Gorton, Attorney General*, and *Timothy R. Malone, Assistant*, amici curiae.

Wright, J.—This case involves a challenge by the appellant, H & B Communications Corporation, to the constitutionality of a business and occupation tax levied by the respondent, City of Richland, Washington, on the gross revenues earned by appellant in said city.

The appellant operates a community antenna television system, known as CATV, in Richland. The CATV system began in Richland on December 8, 1953, when J. H. Whitney & Co., predecessor in interest of the appellant entered into a "license agreement" with the General Electric Company, predecessor in interest of respondent.

On June 6, 1960, the respondent enacted ordinance No. 5.20.090, which reads in material part as follows:

There is hereby levied upon and shall be collected from every person engaged in or carrying on the business of transmitting television by cable, a fee or tax equal to three (3) per cent of the total gross income from such business during the tax year for which the license is required.

On January 3, 1967, ordinance No. 5.20.090 was amended to increase the tax from 3 per cent to 5 per cent.

Appellant's CATV system does not broadcast, but transmits television programs to the listener-viewer via a coaxial cable which is suspended on utility poles. Appellant pays 25 cents per month for the use of each pole.

Appellant's CATV system, the only one in the Richland area, carries programs originating from eight television stations and three FM radio stations. The approximately four thousand subscribers pay appellant for this service at the rate of an initial $15 hook-up charge and $7.50 per month.

Programs carried over the CATV system include national and local news broadcasts, religious broadcasts, communications originating from governmental agencies, and educational programs. Educational television is federally subsidized.

The appellant contends that the Richland business and occupation tax on the CATV system places a burden on interstate commerce, and is therefore unconstitutional. Since the appellant's CATV system carries nationally transmitted broadcasts, there can be no question as to its interstate character.

The fact that the activity engaged in constitutes interstate commerce, does not free the activity from the tax

being levied. *Standard Oil Co. v. State,* 57 Wn.2d 56, 355 P.2d 349 (1960) ; *Washington Tel. Co. v. State,* 77 Wn.2d 923, 468 P.2d 687 (1970). Interstate business must pay its way.

In *Washington-Oregon Shippers Cooperative Ass'n v. Schumacher,* 59 Wn.2d 159, 167, 367 P.2d 112 (1961), we set down the test to be adhered to when taxing interstate commerce. We therein held:

> Since the decision in *Western Live Stock v. Bureau of Internal Revenue* (1938), 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A. L. R. 944, the primary considerations for determining the limits of a state's power to tax activities connected with interstate commerce have been these: (1) Whether the tax places an extra burden on interstate commerce not borne by intrastate commerce, or erects barriers, placing out-of-state businesses at a disadvantage when competing locally; *the discrimination test.* (2) Whether the interstate commerce involved is subject to the risk of repeated exactions of the same nature from other states; *the multiple burden test.* That the latter has become increasingly important is shown by *Northwestern States Portland Cement Co. v. Minnesota* (1959), 358 U.S. 450, 3 L. Ed. (2d) 421, 79 S. Ct. 357.

In the instant case, there is no burden on interstate commerce that is not placed on intrastate commerce. Under Richland City Ordinance No. 5.20.090, any person engaged in transmitting television by cable is subject to the gross receipts tax.

Appellant's CATV system is not subject to the risk of repeated taxation of the same nature since it only operates in the city of Richland. Therefore, respondent's business and occupation tax violates neither the "discrimination test" nor the "multiple burden test" as set out in *Washington-Oregon Shippers Cooperative Ass'n v. Schumacher, supra.*

The Federal Communications Commission has enacted rules and regulations regulating some phases of the operation of CATV systems. Appellant maintains that the FCC has preempted, through its regulatory powers, the respon-

dent's taxing of the appellant's CATV system and, therefore, the tax is in violation of the supremacy clause. U.S. Const. art. 6. We do not agree.

The intent of the FCC not to preempt the CATV field was clearly set forth in 1 F.C.C. 2d 466 (1965):

32. Third, in the event that it is ultimately determined that the Commission has jurisdiction over all CATV systems, we do not contemplate regulation of such matters as CATV rates to subscribers, the extent of the service to be provided, or the award of CATV franchises. Apart from the areas in which the Commission has specifically indicated concern and until such time as regulatory measures are proposed, *no Federal preemption is intended.* Rather, we view our role as one of cooperating with local franchising authorities and State regulatory commissions to the maximum extent possible, such as by making information available to them, consulting with respect to technical standards for CATV operations, etc.

(Italics ours.)

Federal regulation does not preclude state taxation and state taxation does not preclude federal regulation. *Polish Nat'l Alliance v. NLRB,* 322 U.S. 643, 88 L. Ed. 1509, 64 S. Ct. 1196 (1944). In *Standard Oil Co. v. State, supra,* we adhered to the principles as set forth in *Michigan-Wisconsin Pipe Line Co. v. Calvert,* 347 U.S. 157, 98 L. Ed. 583, 74 S. Ct. 396 (1954).

Numerous cases have upheld state levies where it is thought that the tax does not operate to discriminate against commerce or unduly burden it either directly or by the possibility of multiple taxation resulting from other taxes of the same sort being imposed by other states.

■ It is argued that the Richland business and occupation tax abridges the First Amendment freedoms of speech, press and religion as guaranteed by the United States Constitution. In support of this contention, appellant relies heavily upon *Grosjean v. American Press Co.,* 297 U.S. 233, 250, 80 L. Ed. 660, 56 S. Ct. 444 (1935). Therein the court said in part:

It is not intended by anything we have said to suggest that the owners of newspapers are immune from any of the ordinary forms of taxation for support of the government.

Furthermore, in the case at bar there is not any suggestion of the tax being a pretext to impose censorship. *Grosjean* does not support the position of appellant. The First Amendment freedoms of speech and press are not abridged by the business and occupation tax in question.

Appellant further contends the tax imposed by respondent violates the First Amendment guarantee of freedom of religion. We have carefully considered that matter and find no merit therein.

It is argued the appellant is denied equal protection and due process under the law as guaranteed by the Washington State and United States Constitutions.

Since 1933, in *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P.2d 91 (1933), this court has held that a tax such as the instant one is an excise rather than a property tax. In *Stiner,* like the case at bar, the tax was based upon gross receipts. In *State ex rel. Stiner v. Yelle, supra,* this court stated:

> This act does not concern itself with income which has been acquired, but only with the privilege of acquiring, and that the amount of the tax is measured by the amount of the income in no way affects the purpose of the act or the principle involved.

The state legislature is allowed very broad discretion in making classifications. *Boeing Co. v. State,* 74 Wn.2d 82, 442 P.2d 970 (1968). A city council has the same power to make classifications as does the state legislature. *Austin v. Seattle,* 176 Wash. 654, 30 P.2d 646, 93 A.L.R. 203 (1934).

Because the tax levied by respondent is an excise tax, the only requirements are there must be a reasonable basis for singling out a class to tax and all entities in that class must be taxed on the same basis. *Black v. State,* 67 Wn.2d 97, 406 P.2d 761 (1965). The classification of CATV systems in a special category, is reasonable because of the unique

nature of such systems, and there is only one CATV system in Richland. Both of the requirements, therefore, are met in the instant case, and we find no abuse of discretion in the levying of the tax in question.

▮ Finally, it is argued that the Richland business and occupation tax is in violation of U.S. Const. art. 1, § 10 which provides that no state "shall pass any . . . law" impairing the obligation of contracts. Appellant contends it has a contract based on the original "franchise agreement" of 1953 and extended by the Richland City Council in 1960. Article 5, section 4 of the franchise agreement provides:

> The licensee shall pay any and all taxes imposed by the federal government, the State or any political subdivision thereof.

Respondent is a political subdivision of the state. *State ex rel. Hodde v. Superior Court*, 40 Wn.2d 502, 244 P.2d 668 (1952); *State v. Aberdeen*, 34 Wash. 61, 74 P. 1022 (1904). There is no unconstitutional impairment of contract by the levying of the respondent's business and occupation tax.

The decision of the trial court is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, McGOVERN, and STAFFORD, JJ., concur.

Petition for rehearing denied July 1, 1971.