[Nos. 41996, 41997.　En Banc.　May 17, 1973.]

PUBLIC UTILITY DISTRICT NO. 2 OF GRANT COUNTY et al., *Respondents*, v. THE STATE OF WASHINGTON, *Appellant*.

*Slade Gorton, Attorney General, Timothy R. Malone, Senior Assistant,* and *William D. Dexter, Assistant,* for appellant.

*Milne & Peterson,* by *Robert A. Milne,* for respondent Public Utility District No. 2 of Grant County.

*Davis, Arneil, Dorsey & Kight (David J. Dorsey,* of counsel), for respondent Public Utility District No. 1 of Chelan County.

UTTER, J.—Two public utility districts brought actions to recover state taxes paid, alleging such taxation discriminated against or burdened interstate commerce in violation of article 1, section 8, clause 3 of the United States Constitution. The utilities prevailed in superior court, and the State of Washington appeals.

The sole question under the facts in this appeal is whether the public utility tax imposed pursuant to RCW 82.16.020,[1] which permits in its measurement gross income derived from sales of power by the Washington public utility districts to the Oregon utilities (RCW 82.16.050),[2] is in violation of the commerce clause.

The respondent utility districts, during the years 1959 to 1963, had deducted the value of their power sales to the out-of-state Oregon public utilities from the gross income of their business, which serves as the measurement of the public utility tax. A field audit by the tax commission of the State of Washington revealed these deductions, claimed them improper, and issued tax assessments to recover the revenue avoided by the deductions. The districts protested the tax assessments and a hearing was held at which their petition for relief was denied. Following the tax board hearing, the districts paid the taxes under protest and

---

[1]RCW 82.16.020. "Public utility tax imposed. There is levied and there shall be collected from every person a tax for the act or privilege of engaging within this state in any one or more of the businesses herein mentioned. The tax shall be equal to the gross income of the business, multiplied by the rate set out after the business, as follows:

"(1) . . . light and power, telephone and telegraph businesses: Three and six-tenths percent;"

[2]The alleged violation of the commerce clause was argued to be found in RCW 82.16.050, which provides in part:

"Deductions in computing tax. In computing tax there may be deducted from the gross income the following items:

".  . .

"(2) Amounts derived from the sale of commodities to persons in the same public service business as the seller, for resale as such within this state. .  .  .

".  . .

"(6) Amounts derived from business which the state is prohibited from taxing under the Constitution of this state or the Constitution or laws of the United States;"

brought separate actions to recover the amount paid. At trial the court overturned the decision of the hearing board and held that Public Utility District No. 1 of Chelan County and Public Utility District No. 2 of Grant County were entitled to their deductions of that income derived from out-of-state sales with the Oregon utilities.

The record shows that Chelan County PUD and Grant County PUD are municipal corporations, organized and existing under the laws of the State of Washington, who conduct their business activities solely within the state. Both utilities operate large hydroelectric generating dams on the Columbia River with the bulk of generated power being sold to other public utilities from within and without the state of Washington. The power generated and sold to the Oregon utilities is delivered to the purchaser at the dam switchyards in the state of Washington, with purchases involving the federal Priest Rapids Project[3] giving the purchaser the option of taking delivery at a nearby Bonneville Power Administration substation, also within the state of Washington. From these delivery points within the state of Washington, the Bonneville Power Administration transmits the power in accordance with the agreements between the selling and purchasing public utilities, be they in state or out of state.

---

[3]The Priest Rapids Project is authorized by Public Law 544 (68 Stat. 573 (1954)). Section 6 of this public law proclaims that all states involved in the electric utility interconnection, known as the Northwest Power Pool, are to be granted a reasonable portion of the power capacity and a reasonable portion of the power output within the marketing area, which is established without recognition of state boundaries. Furthermore, any difficulty in fulfilling the statutory mandate permits federal intervention through the Bonneville Power Administration by actual purchase of power and rate setting. Because of this *mandatory* furnishing of power throughout the pool area, the issue of interstate discrimination in this case may possibly be disposed by the workings of Public Law 544. This is so, for how can any public utility district proclaim that the imposition of a state tax will deny power sales to another state's utility, when such furnishing of power in reasonable amounts at reasonable rates is mandatory? However, because independent grounds exist to decide the question before us, we do not examine the impact of Public Law 544 on this dispute.

Under the power sales contracts between the Washington public utility districts and the Oregon utilities, the points of delivery were within the state of Washington, and involved use of the federal transmission facilities of Bonneville. The Bonneville Power Administration owns and operates part of a high voltage electrical transmission grid throughout the Pacific Northwest. It is impossible to trace the flow of electricity throughout the grid from generator to purchaser, and to avoid this factual proof problem, the parties for trial purposes stipulated that the very same power delivered to the purchasers in this state ends up outside the state. Under the agreements between all the interested public utilities and Bonneville, the Oregon utilities are responsible for payment for the transmission services provided by Bonneville.

■ In deciding whether the taxing scheme under attack is violative of the commerce clause, extensive argument was made by the parties over the proper characterization of the tax and the related transactions in dispute. Historically, such characterization was determinative of the constitutional issue, but currently the courts have asked "whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce." *Best & Co. v. Maxwell,* 311 U.S. 454, 456, 85 L. Ed. 275, 61 S. Ct. 334 (1940). *See Nippert v. Richmond,* 327 U.S. 416, 90 L. Ed. 760, 66 S. Ct. 586, 162 A.L.R. 844 (1946). Whatever the name of the tax herein involved, which we find to be on "the act or privilege of engaging" within the state in certain businesses, the fact that some portion of the "gross income" which is used as the measurement for the tax is derived from interstate transactions does not necessitate striking down the statute.

In *Washington Tel. Co. v. State,* 77 Wn.2d 923, 929, 468 P.2d 687 (1970), we disposed of this assertion by stating:

> It is clear that the state is ". . . exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation." *General Motors Corp. v. Washington,* 377 U.S. 436, 440, 12 L. Ed. 2d 430, 84 S. Ct. 1564.

Also, we stated in *McKinnis Travel Serv., Inc. v. State,* 78 Wn.2d 229, 232, 472 P.2d 392 (1970): "the mere fact that an activity being taxed is an integral part of interstate commerce does not render the tax *per se* invalid." The privilege of engaging in business within the state is within the state's constitutional taxing powers. *Crown Zellerbach Corp. v. State,* 45 Wn.2d 749, 278 P.2d 305 (1954).

■ The only critical factor when "gross receipts" are involved is that they must be apportioned according to their connection with local events, to avoid cumulative taxation. *See Washington Tel. Co. v. State, supra* at 929. However, as in *Washington Tel. Co.,* there is no need of apportionment since the totality of the plaintiffs' revenue earning activities occurs within the state. *Convoy Co. v. Taylor,* 53 Wn.2d 439, 334 P.2d 772 (1959); *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964). Moreover, "A taxpayer has the burden of proving that a state tax, as applied, fails to achieve a fair apportionment" (*Crown Zellerbach Corp. v. State, supra* at 763) and there is absolutely no evidence in the record alleging this unfairness.

■ This primary concern "with the actuality of operation", however, is not an invitation to an ad hoc analysis of the difficult problem of a state tax alleged to violate the commerce clause. *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 69, 10 L. Ed. 2d 202, 83 S. Ct. 1201 (1963). The refutation of the mechanical tests in *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A.L.R. 944 (1938) has led to use of the following tests:

(1) Whether the tax places an extra burden on interstate commerce not borne by intrastate commerce, or erects barriers, placing out-of-state businesses at a disadvantage when competing locally; *the discrimination test.*
(2) Whether the interstate commerce involved is subject to the risk of repeated exactions of the same nature from other states; *the multiple burden test.*

*Washington-Oregon Shippers Cooperative Ass'n v. Schu-*

*macher*, 59 Wn.2d 159, 167, 367 P.2d 112 (1961). *See also H & B Communications Corp. v. Richland*, 79 Wn.2d 312, 314, 484 P.2d 1141 (1971); *McKinnis Travel Serv., Inc. v. State, supra.* In this case, we need only address ourselves to the first consideration, the discrimination test, for no argument has been advanced that multiple burdens exist.[4]

The mere placement of a burden or barrier on interstate commerce does not alone dictate a finding of an unconstitutional discrimination; rather such burdens or barriers must be of the quality that are not "borne by intrastate commerce" or place "out-of-state businesses at a disadvantage when competing locally." As an example, the argument that the tax imposed on the Washington utilities amounts to an unconstitutional burden on interstate commerce because it may be passed on by contract at the time of sale to the out-of-state utilities (and ultimately to their customers) has been repeatedly rejected for two basic reasons:

▇ it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business . . . [2] Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress.

*McGoldrick v. Berwind-White Coal Mining Co.*, 309 U.S. 33, 46-47, 84 L. Ed. 565, 60 S. Ct. 388, 128 A.L.R. 876 (1940).[5]

[4]*See General Motors Corp. v. Washington*, 377 U.S. 436, 449, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964); *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 3 L. Ed. 2d 421, 79 S. Ct. 357, 67 A.L.R.2d 1292 (1959); *McKinnis Travel Serv., Inc. v. State*, 78 Wn.2d 229, 232, 472 P.2d 392 (1970); *Washington–Oregon Shippers Cooperative Ass'n v. Schumacher*, 59 Wn.2d 159, 367 P.2d 112 (1961); *Crown Zellerbach Corp. v. State*, 45 Wn.2d 749, 763, 278 P.2d 305 (1954).

[5]*See also Braniff Airways, Inc. v. Nebraska State Bd. of Equalization & Assessment*, 347 U.S. 590, 98 L. Ed. 967, 74 S. Ct. 757 (1954); *Interstate Oil Pipe Line Co. v. Stone*, 337 U.S. 662, 93 L. Ed. 1613, 69 S.

In deciding the issue of this appeal, a proper analysis must take the whole scheme of taxation into account to determine whether the actual operation of that taxing structure in its relationship to intrastate and interstate commerce results in an unconstitutional discrimination against the latter.[6]

Under the tax scheme here at issue, RCW 82.16.020 and .050(2), the respondent public utility districts argue that we find discrimination of interstate commerce by only evaluating the moment at which the sales of power occur. Allegedly, to be compared, is the sale to Oregon utilities for resale in the state of Oregon, with a similar sale of power to a Washington utility for resale in the state of Washington. In the former sale, the Washington utilities may not claim a deduction under RCW 82.16.050(2), whereas in the latter sale a deduction may be claimed. This type of factual juxtaposition on which the alleged discrimination of interstate commerce is argued fails to employ the "whole scheme of taxation" rule and has been rejected by this

Ct. 1264 (1949); *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A.L.R. 944 (1938); *Columbia River Bridge Co. v. State,* 46 Wn.2d 385, 388, 282 P.2d 283 (1955).

[6]*See Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 10 L. Ed. 2d 202, 83 S. Ct. 1201 (1963); *Southern Pac. Co. v. Gallagher,* 306 U.S. 167, 83 L. Ed. 586, 59 S. Ct. 389 (1939); *Henneford v. Silas Mason Co.,* 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524 (1937); *Gregg Dyeing Co. v. Query,* 286 U.S. 472, 76 L. Ed. 1232, 52 S. Ct. 631, 84 A.L.R. 831 (1932); *Galveston, H. & S.A. Ry. v. Texas,* 210 U.S. 217, 52 L. Ed. 1031, 28 S. Ct. 638 (1908); *Hinson v. Lott,* 75 U.S. (8 Wall.) 148, 19 L. Ed. 387 (1869).

Those high state courts that have been faced with interstate commerce discrimination cases since *Halliburton* have used *Halliburton* for the proposition that the resolution of their cases requires consideration of the whole tax scheme of the state. *See Robert Emmet & Son Oil & Supply Co. v. Sullivan,* 158 Conn. 234, 259 A.2d 636 (1969); *Colonial Pipeline Co. v. Clayton,* 275 N.C. 215, 166 S.E.2d 671 (1969); *Philco Corp. v. Department of Revenue,* 40 Ill. 2d 312, 239 N.E.2d 805 (1968); *Larey v. Continental S. Lines, Inc.,* 243 Ark. 278, 419 S.W.2d 610 (1967) (reliance on *Halliburton,* though facts of case did not require evaluation of total tax scheme); *Republic Steel Corp. v. McCastlain,* 240 Ark. 979, 403 S.W.2d 90 (1966); *Atlantic Gulf & Pac. Co. v. Gerosa,* 16 N.Y.2d 1, 261 N.Y.S.2d 32 (1965).

court. In *Crown Zellerbach,* at page 759, appellant there argued:

> as a local manufacturer selling to out-of-state customers in interstate commerce, it is required to pay a tax for the privilege of engaging in manufacturing. A local manufacturer, whose sales are intrastate, can exercise the same privilege—that of manufacturing—without subjection to tax.

The court was unable to "observe the competitive disadvantage mentioned by appellant. A manufacturer who sells to persons outside Washington can hardly be in competition with one who sells to buyers within the state."

In this case, the public utility districts selling out of state are not in competition with one who sells in state. Additionally, when the choice between an in-state or out-of-state sale is placed with the same Washington seller, we must look to the total taxing scheme of the state.

Considered in isolation, as urged by respondents, the Washington tax deduction provision may also be discriminatory; it was intended to apply solely to sales for resale within this state. Alone, it may be invalid, but it does not stand alone, and this fact, and the failure of the respondents and the trial court below to so recognize, results in their abbreviated analysis. This isolated evaluation led the trial court in *Silas Mason Co. v. Henneford,* 15 F. Supp. 958 (E.D. Wash. 1936), *rev'd,* 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524 (1937), to declare invalid the tax in question. Similarly, here, it could lead us to strike down the tax assessment without having correctly evaluated the taxing scheme's operation.

This scheme contains no constitutional infirmity for

> There is no demand in [the] Constitution that the State shall put its requirements in any one statute. It may distribute them as it sees fit, if the result, taken in its totality, is within the State's constitutional power.

*Gregg Dyeing Co. v. Query,* 286 U.S. 472, 480, 76 L. Ed. 1232, 52 S. Ct. 631, 84 A.L.R. 831 (1932). A similar deduction provision, RCW 82.04.430(6), was at issue in *Crown Zellerbach* in which a unanimous court found that to disal-

low the deduction ignores the lawful purpose behind its operation. Imposition of actual tax liability is the purpose advanced by such statutes in an effort to avoid double or triple tax liability as to particular products or activities. "In other words, the policy is to impose *actual liability* for payment of tax only once . . ." *Crown Zellerbach Corp. v. State, supra* at 753.

The public utility tax on electrical power originating in this state is to be imposed only once under the Washington taxing scheme. The deduction here at issue permits this singular tax imposition by preventing the pyramiding effect of the public utility tax, which is otherwise certain to occur. The only relevant difference between the present case and *Crown Zellerbach* is that, rather than having an interrelated tax structure (manufacturing-wholesaling) imposed, this case has a shifting tax structure in which singular tax liability exists but shifts to another utility. By so doing, the in-state distribution of the use of power is *not* exempted and is taxed, just as is the out-of-state distribution of power. Equal treatment is the theme of this system. *H & B Communications Corp. v. Richland,* 79 Wn.2d 312, 484 P.2d 1141 (1971). The out-of-state utility is in no worse position than its in-state competitor. The state is playing no favorite with its resident businesses at the expense of similarly situated out-of-state enterprises.

Respondents' contention that the rationale of *Crown Zellerbach* does not apply because only the interstate wholesalers are taxed is in error and arrived at because they perceive the interstate wholesalers as the out-of-state taxpayers, which they are not. The complaining taxpayer here is an *in-state* public utility and not an out-of-state taxpayer. "It is only a discriminatory tax levied upon interstate commerce, and not upon intrastate commerce, that is in violation of Art. I, § 8, of the constitution of the United States." *Columbia River Bridge Co. v. State,* 46 Wn.2d 385, 389, 282 P.2d 283 (1955).

The confusion results, in part, because the respondents look only to their status as complaining public utilities at

the time of their sales to in-state or out-of-state purchasers, and not to the impact of the total tax structure on the subject matter here involved, the disposition and use of power. If the whole tax scheme is evaluated, the tax deduction that is made at the sale to a Washington utility is made up at the time the Washington utility buyer sells to its customers. Thus, "In the instant case, there is no burden on interstate commerce that is not placed on intrastate commerce." *H & B Communications Corp. v. Richland, supra* at 314. The in-state and out-of-state disposition of power is equally treated. There is tax equivalence here and no discrimination on interstate commerce.

Judgment reversed.

HALE, C.J., ROSELLINI, HUNTER, HAMILTON, STAFFORD, and BRACHTENBACH, JJ., concur.

FINLEY, J. (dissenting)—The opinion of the majority incorporates the appropriate judicial tests for determining whether the method of tax assessment utilized by the State of Washington, concerning interstate sales of electrical power to out-of-state utilities buying for resale, violates the commerce clause of the United States Constitution. Even so, the majority, in my judgment, then errs greatly (a) in failing to apply these tests to determine constitutionality, (b) by addressing hypothetical facts and issues not before the court in this appeal, and (c) in reasoning from irrelevant and inapplicable authority. Therefore, I must dissent.

To reach its conclusion, the majority purports to examine the "whole scheme of taxation" involved. With this as a point of reference, the majority then reasons that the favored non-taxed status of *intrastate* sales is balanced out or voided as against the taxing burden borne by *interstate* commerce because the resale of electricity intrastate by a second Washington utility to its consumers *is* taxed. However, this approach does not address the issue which is before this court; *i.e.*, whether interstate commerce is unduly burdened by a tax only on income received from *interstate* sales to utilities for resale. Rather, the majority

opinion seems to be concerned with the right and power of the state to tax all units of electrical energy produced within its borders. While this point of view evinces admirable local emphasis and exclusive state interest and concern, it nonetheless collides abruptly with constitutional restrictions on the power of the state to unduly burden interstate commerce. Ours is a system of dual sovereignty, and although our state interests are not necessarily subservient to federal interests, they are necessarily subject to the decision of many courts: that the sovereignty of any one state cannot impose such an unduly restrictive burden on interstate commerce.

The real issue is whether the State of Washington may, consistent with the commerce clause, levy a tax upon gross income received from interstate sales and *exempt* an identical intrastate sale from this tax. This issue may be determined by a test which the majority proposes, yet fails to apply:

> (1) *Whether the tax places an extra burden on interstate commerce not borne by intrastate commerce,* or erects barriers, placing out-of-state businesses at a disadvantage when competing locally; *the discrimination test.*

(Italics mine.) *Washington-Oregon Shippers Cooperative Ass'n v. Schumacher,* 59 Wn.2d 159, 167, 367 P.2d 112 (1961). Having once stated the test, the majority ignores it, implying instead that sales to the out-of-state utilities—assuming a nonphysical "delivery" in Washington—occur entirely within the state of Washington and, because the plaintiffs before the court in this appeal are *"in-state"* public utilities, these transactions do not involve interstate commerce. The error of this conclusion is evidenced by *Panhandle E. Pipe Line Co. v. Public Serv. Comm'n,* 332 U.S. 507, 513, 92 L. Ed. 128, 68 S. Ct. 190 (1947), where the United States Supreme Court held that gas which is transferred across state lines to be "furnished to local utilities for resale is supplied unquestionably, both as to transportation and as to sale, in *interstate commerce.*" (Italics mine.) *See Public Util. Comm'n v. Attleboro Steam & Elec. Co.,* 273 U.S. 83,

71 L. Ed. 549, 47 S. Ct. 294 (1927). It is difficult, indeed, to conceive of a distinction in the nature of the transaction here based solely upon the physical characteristics of gas and electricity; both constitute a continuous flow of energy across state lines. In view of the holding in *Panhandle*, the majority's suggestion that the sale of electricity to out-of-state utilities *does not involve interstate commerce is in error*. Because we are dealing in fact with interstate commerce, the question for this court is whether such interstate commerce must, as a result of the tax scheme under consideration, bear an extra burden which is not borne by intrastate commerce. In my judgment, this tax of RCW 82.16.020 upon gross income received from interstate sales is just such a burden. To clarify the nature of this extra burden, consideration should be given to *Public Util. Comm'n v. Attleboro Steam & Elec. Co., supra* at 89, 90, wherein the United States Supreme Court held the following:

[I]n the sale of gas in wholesale quantities, not to consumers, but to distributing companies for resale to consumers, where the transportation, sale and delivery constitutes an unbroken chain, fundamentally interstate from beginning to end, "the paramount interest is not local but national, admitting of and requiring uniformity of regulation," which, ". . . may be highly necessary to preserve equality of opportunity and treatment among the various communities and States concerned."

. . . The forwarding state obviously has no more authority than the receiving State to place a direct burden upon interstate commerce. *Pennsylvania v. West Virginia*, 262 U. S. 553, 596.

*Accord, Southern Pac. Co. v. Arizona*, 325 U.S. 761, 89 L. Ed. 1915, 65 S. Ct. 1515 (1945). Thus, key factors for determining whether a discriminatory burden is placed upon interstate commerce are whether the tax *uniformly* regulates sales to utilities for resale, and affords *equal opportunity and treatment* among the states involved. With these factors and the discriminatory burden test in mind, I must conclude as follows: (1) when a public utility district sells power to an Oregon utility for resale in the state of Oregon

it must pay a 3.6 percent tax upon the gross income received therefrom; when it sells power to a Washington utility for resale in the state of Washington it pays no tax; (2) this method of tax assessment does not uniformly tax otherwise identical interstate and intrastate transactions; (3) by placing a tax burden upon interstate transactions which is not borne by intrastate commerce, this unequal taxing structure affords an unconstitutional economic barrier upon out-of-state sales, and therefore violates U.S. Const. art. 1, § 8—the commerce clause. The truly unfortunate aspect of this taxing scheme is its apparent practical effect of discouraging Washington utilities from selling to Oregon utilities, since the Washington utility must pay a tax if it sells to an out-of-state utility that it is not required to pay if it sells the electrical energy to another Washington utility. This burden upon interstate commerce—as an inhibitory restriction by economic inducement to sell only intrastate—is discriminatory and should not be sustained.

It makes no difference whether the language of RCW 82.16.050(2) specifically exempts from taxation sales to Washington utilities, or explicitly states that a tax shall be levied only upon out-of-state sales; nor does it matter that the Washington utility which sells interstate is the party taxed, for the result is the same in each instance: as between intrastate and interstate sales to other utilities for resale, only *interstate* sales of electricity to utilities are recognized as taxable income by the State of Washington; *there is no similar burden of a tax which the identical intrastate sale must bear.* As noted by the majority in its opinion, "it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce." *Best & Co. v. Maxwell,* 311 U.S. 454, 455-56, 85 L. Ed. 275, 61 S. Ct. 334 (1940); *see Nippert v. Richmond,* 327 U.S. 416, 90 L. Ed. 760, 66 S. Ct. 586, 162 A.L.R. 844 (1946). With this in mind, it is my best judgment that although the effect of this tax, in preserving the use of our natural resources for Washington residents by encouraging the sale

of electricity exclusively in Washington is certainly laudable, its practical operation appears to inhibit and thereby discriminate against interstate commerce through this policy of economic isolationism in violation of U.S. Const. art. 1, § 8. As a matter of elementary economics, where one is forced to pay a tax if one sells interstate that one need not pay if one sells intrastate, good business sense suggests avoiding or minimizing interstate sales. Here, faced with this very decision, the respondent Washington utilities may well be discouraged from selling power interstate as a result of RCW 82.16.020. This the commerce clause prohibits. As stated by the Supreme Court in *McGoldrick v. Berwind-White Coal Mining Co.*, 309 U.S. 33, 56, 84 L. Ed. 565, 60 S. Ct. 388, 128 A.L.R. 876 (1940):

> While a state, in some circumstances, may by taxation suppress or curtail one type of intrastate business to the advantage of another type of competing business which is left untaxed, see *Puget Sound Power & Light Co.* v. *Seattle,* 291 U. S. 619, 625, and cases cited, it does not follow that interstate commerce may be similarly affected by the practical operation of a state taxing statute.

In spite of this warning, it appears to me that the State of Washington has, by taxation, suppressed and curtailed interstate sales of electricity to out-of-state utilities to the advantage of intrastate sales which are left untaxed. In dealing with this issue, the majority reasons that the "out-of-state utility is in no worse position than its in-state competitor. The state is playing no favorite with its resident businesses at the expense of similarly situated out-of-state enterprises." However, this reasoning is irrelevant at best. The "in-state" and "out-of-state" utilities are not in competition under the immediate taxing system; what is at stake in this appeal is whether *interstate* sales by the Washington public utility district which produces the electricity should be inhibited and discouraged by the burden of a tax which need not be paid on identical *intrastate* sales. It is the duty of this court to remove the "guise" of an indirect burden on interstate commerce where the real ef-

fects—when distributed through the play of economic forces—suppress interstate commerce to an extent equal to a prohibited tax levied directly upon the commerce itself. *Nippert v. Richmond, supra* at 426; *see* Hartman, *State Taxation of Interstate Commerce: A Survey and an Appraisal,* 46 Va. L. Rev. 1051, 1072 (1960). To sustain the burden of the immediate tax upon the basis of irrelevant reasoning concerning relative disadvantages to hypothetical "in-state" and "out-of-state" competitors, or upon the ground that this method of tax assessment only "indirectly" burdens interstate commerce, is the very "mechanical approach" (*Parker v. Brown,* 317 U.S. 341, 360, 87 L. Ed. 315, 63 S. Ct. 307 (1943)) which the United States Supreme Court has rejected and which the majority alleges it is *avoiding. Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A.L.R. 944 (1938); *see also Di Santo v. Pennsylvania,* 273 U.S. 34, 44, 71 L. Ed. 524, 47 S. Ct. 267 (1927). As I have attempted to show above, the practical operative effect of RCW 82.16.020 as enforced by the State of Washington is one of directly inhibiting and discriminatorily burdening the interstate sale of electrical power to out-of-state utilities. In my judgment, it therefore violates the commerce clause.

Finally, the majority suggests that the taxing scheme of RCW 82.16.020 and 82.16.050(2) prevents a "pyramiding effect" of the public utility tax. Although this court is not directly faced with this issue of multiple burdens on interstate commerce in the instant case, I am convinced that the majority is again in error, and that the likelihood of a double tax liability is substantially *increased* under the current method of assessment utilized by the State of Washington. In *Crown Zellerbach Corp. v. State,* 45 Wn.2d 749, 755, 762, 278 P.2d 305 (1954), this court reviewed an attack upon a taxing statute (then RCW 82.04.460) which made "no distinction between sales within the state and sales outside the state", and which provided for fair and equal treatment of interstate and intrastate sales through an "adequate provision for apportionment of income" and therefore tax liabili-

ty—a factor of fairness noticeably lacking in the taxing statutes immediately before this court. Despite the distinct character of the taxing scheme in *Crown Zellerbach,* the test which we there recognized and which the majority herein briefly refers to is equally applicable to the possibility of a "pyramiding effect" of taxation in the instant case:

> The legislative purpose, or tax policy, of the above-quoted statutes is to provide for as equitable an imposition of *actual tax liability* as possible in so far as our state business and occupation tax is concerned. *Implicit in this policy is the avoidance of an imposition of double or triple tax liability as to particular products.*

(Italics mine.) *Crown Zellerbach Corp. v. State, supra* at 753. It is *risk* or *potentiality* of cumulative burdens against which interstate commerce is protected by the commerce clause. *Western Live Stock v. Bureau of Revenue, supra* at 255-56; *Gwin, White & Prince, Inc. v. Henneford,* 305 U.S. 434, 439, 83 L. Ed. 272, 59 S. Ct. 325 (1939); *J.D. Adams Mfg. Co. v. Storen,* 304 U.S. 307, 82 L. Ed. 1365, 58 S. Ct. 913, 117 A.L.R. 429 (1938). Under the method of tax assessment utilized by the State of Washington in this case, the single product of electricity is subjected not only to the Washington public utility tax of RCW 82.16.020, but may be subjected as well to additional taxation by our sister states upon its subsequent sale by the out-of-state utility to its consumers. This pyramiding tax liability upon interstate sales is the very burden which is prohibited by the commerce clause *and the very evil which the majority purports to avoid.* To remove this burden of potential multiple tax liability, this court need not declare either RCW 82.16.020 or 82.16.050(2) unconstitutional with the result that a Washington utility must pay a tax both when it sells to other Washington utilities *and* when it sells to out-of-state utilities for resale. Such a requirement would create the undesirable effect of the above-described pyramiding taxation upon *both* interstate and intrastate commerce. Rather, only the state's method of tax assessment should be declared unconstitutional, and this burden of multiple taxa-

tion upon both interstate and intrastate commerce—as well as the discriminatory burden of taxation upon interstate commerce described earlier—can be completely eliminated by giving effect to the exemptive provision of RCW 82.16.050 (6) for interstate sales of electricity for resale. This would result in a deduction from the gross income tax levied against the selling Washington utility for both intrastate and interstate sales. Therein, the criteria of uniformity, equality, and fairness in taxation of commerce, required by U.S. Const. art. 1, § 8, would be achieved.

In my best judgment, the interpretation placed upon RCW 82.16.020 and 82.16.050 by the state in assessing this tax *does* discriminate against interstate commerce by placing the disparate burden of taxation upon interstate transactions—a burden not borne in identical intrastate transactions. The tax, in its practical operation, appears to inhibit and discourage interstate commerce in violation of the commerce clause. Consequently, the public utility districts should not be held liable for the tax assessed and paid under protest in this case, since they are entitled to a deduction from gross income, pursuant to the provision of RCW 82.16.050 (6), in the amount of sales of electricity to out-of-state utilities for resale.

For the reasons indicated, I dissent and would affirm the decision of the trial court.

WRIGHT, J., concurs with FINLEY, J.

Petitions for rehearing denied July 25, 1973.