576 P.2d 291

**ARIZONA PUBLIC SERVICE COMPANY, El Paso Electric Company, Salt River Project Agricultural Improvement and Power District, Southern California Edison Company and Tucson Gas & Electric Company, Plaintiffs-Appellants,**

v.

**Fred O'CHESKY, Commissioner of Revenue, Bureau of Revenue and State of New Mexico, Defendants-Appellees.**

No. 11369.

Supreme Court of New Mexico.

March 23, 1978.

---

1. §§ 41–19–1 et seq., N.M.S.A.1953 (Repl.1972 and Supp.1975).

Montgomery, Andrews & Hannahs, Frank Andrews, III, Santa Fe, Rodey, Dickason, Sloan, Akin & Robb, William C. Schaab, Albuquerque, White, Koch, Kelly & McCarthy, Benjamin Phillips, Santa Fe, Bigbee, Stephenson, Carpenter & Crout, Richard N. Carpenter, Santa Fe, Snell & Wilmer, Mark Wilmer, Daniel J. McAuliffe, Phoenix, Ariz., for appellants.

Toney Anaya, Atty. Gen., Jan Unna, Daniel H. Friedman, Special Asst. Attys. Gen., Bureau of Revenue, Santa Fe, for appellees.

## OPINION

PAYNE, Justice.

Appellants, five major public utility companies who generate electricity in New Mexico, sought a judgment declaring the provisions of the Electrical Energy Tax Act, Ch. 263, 1975 N.M.Laws 1371[1] to be unconstitutional and void. The district court denied their motion for summary judgment and granted summary judgment on a cross-motion filed by the appellee, Commissioner of the Bureau of Revenue. We sustain the trial court.

There was testimony that power plants owned and operated by the utility companies within the State of New Mexico cause an estimated $12,000,000 of environmental damage each year. There was evidence that the socio-economic problems caused by the plants may cost as much as $27,000,000 to remedy. Further testimony indicated that if the utilities were to generate the same amount of electricity at their plants outside of New Mexico it could cost them an additional $124,000,000 annually. New Mexico enacted the Electrical Energy Tax to deal with these conditions. The Act imposes a tax upon the "privilege of generating electricity in this state for the purpose of sale." The provisions of the Act pertinent to this suit are §§ 3[2] and 9[3]. Section 3 provides as follows:

A. For the privilege of generating electricity in this state for the purpose of sale, whether the sale takes place in this state or outside this state, there is imposed on any person generating electricity a temporary tax, applicable until July 1, 1984, of four-tenths of one mill ($.0004) on each net kilowatt hour of electricity generated in New Mexico.

Section 9 provides:

A. If on electricity generated outside this state and consumed in this state, an electrical energy tax or similar tax on such generation has been levied by another state or political subdivisions thereof, the amount of such tax paid may be credited against the gross receipts tax due this state.

B. On electricity generated inside this state and consumed in this state which was subject to the electrical energy tax, *the amount of such tax paid may be credited against the gross receipts tax due this state.* (Emphasis added.)

Section 3 imposes a 2% tax[4] on all electricity generated in the state. Section 9 provides a tax credit against the 4% gross receipts tax imposed on all retail sales in the state. The ultimate effect is that in-state sales are, as in the past, subject to a total tax burden of 4% while out-of-state

---

1. The Act amended §§ 45–4–28 and 72–13–24, N.M.S.A.1953 and added §§ 72–34–1 through 72–34–6 and 72–16A–16.1.

2. Section 72–34–3, N.M.S.A.1953 (Supp.1975).

3. Section 72–16A–16.1, N.M.S.A.1953 (Supp. 1975).

4. For the sake of clarity in this opinion we will refer to the tax as 2% although it varies slightly and is usually less.

sales are subjected to a 2% tax burden which they previously did not have.

During the pendency of this litigation, the United States Congress enacted the Tax Reform Act of 1976. Section 2121(a) of that Act, 15 U.S.C. § 391 (1976), provides:

No State, or political subdivision thereof, may impose or assess a tax on or with respect to the generation or transmission of electricity *which discriminates* against out-of-State manufacturers, producers, wholesalers, retailers, or consumers of that electricity. For purposes of this section a tax is discriminatory *if it results, either directly or indirectly, in a greater tax burden on electricity which is generated and transmitted in interstate commerce than on electricity which is generated and transmitted in intrastate commerce.* (Emphasis added.)

The appellants argue that New Mexico's Electrical Energy Tax is prohibited by § 2121(a) of the federal act because it discriminates against out-of-state producers. If so, it must give way to the federal act because of the Supremacy Clause of the United States Constitution. U.S.Const. art. VI, cl. 2.

The operative test of a discriminatory tax under § 2121(a) is:

[I]f it results, either directly or indirectly, in a *greater tax burden* on electricity which is generated and transmitted in interstate commerce than on electricity which is generated and transmitted in intrastate commerce. (Emphasis added.)

The utilities contend that the credit provisions of the Electrical Energy Act result in a "greater tax burden" on electricity destined for use out-of-state than on electricity used in-state. They misread the section's language. The word "greater" means "larger", not "additional." As used, greater is a word of comparison.

The Electrical Energy Tax does not "directly" place a greater tax burden on electricity destined for out-of-state transmission. All utilities pay the same generating tax at the same rate. Ch. 263, § 3, 1975 N.M.Laws 1371.

■ To determine whether the Electrical Energy Tax "indirectly" results in a greater burden on electricity destined for out-of-state use as compared to electricity used within the state, the *entire tax structure* of a state as applied to the *particular commodity* which is taxed must be examined. *See Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963); *Gregg Dyeing Co. v. Query,* 286 U.S. 472, 52 S.Ct. 631, 76 L.Ed. 1232 (1932).

■ The test of discrimination is not whether a tax imposes an *additional* burden on out-of-state electricity compared to the situation prior to passage of the tax. The test is whether the generation tax on electricity destined for out-of-state use is larger than the total tax on each unit of electricity subsequently consumed in New Mexico. The gross receipts tax, although reduced by the amount of generation tax, continues to impose a burden on in-state sales of electricity from which out-of-state sales of electricity are exempted. Thus, while the out-of-state electricity must bear an *additional* tax that it was not previously required to bear, payment of this tax does not result in a "greater tax burden" on that electricity.

■ New Mexico chose to decrease the rate of its sales tax for electricity by allowing the generation tax to be credited against its sales tax. This approach is not condemned by § 2121(a). A state has the power to shift the burden of its tax as it feels best as long as it does so in a nondiscriminatory manner. *See Public Utility Dist. No. 2 of Grant County v. State,* 82 Wash.2d 232, 510 P.2d 206 (1973), *appeal dismissed for want of a substantial federal question,* 414 U.S. 1106, 94 S.Ct. 833, 38 L.Ed.2d 734 (1974).

■ Appellants further claim that the Electrical Energy Tax violates the Commerce Clause of the United States Constitution. U.S.Const. art. I, § 8, cl. 3. They claim that the energy tax places an undue burden on interstate commerce. Interstate commerce and its instrumentalities are not immune from state taxation. Interstate commerce must pay its own way. *Western*

*Live Stock v. Bureau*, 303 U.S. 250, 254, 58 S.Ct. 546, 82 L.Ed. 823 (1938).

■ The test in determining whether the Electrical Energy Tax places an undue burden on interstate commerce, is whether the Act, in its practical application, discriminates against interstate commerce. *Best & Co. v. Maxwell*, 311 U.S. 454, 455, 456, 61 S.Ct. 334, 85 L.Ed. 275 (1940). The courts in passing on this question have employed two tests:

(1) Whether the tax places an extra burden on interstate commerce not borne by intrastate commerce, or erects barriers, placing out-of-state businesses at a disadvantage when competing locally; *the discrimination test.* (2) Whether the interstate commerce involved is subject to the risk of repeated exactions of the same nature from other states; *the multiple burden test.*

*Public Utility, supra*, 510 P.2d at 209.

Appellants argue that the energy tax is contrary to both the discrimination test and the multiple burden test.

### (1) *Discrimination Test*

■ Appellants contend that while the energy tax on its face may not violate the Commerce Clause, the operation of the credit provisions contained in § 9 of the Act work to discriminate against the out-of-state producer. We do not agree with this analysis.

The appellants have failed to show that the energy tax as applied places out-of-state producers at a disadvantage when competing against local producers. The out-of-state producers who retail electricity inside the state get the same tax credit as the in-state producers. If electricity consumed in New Mexico is subject to an electrical energy tax imposed by another state it can also take advantage of the credit provisions of § 9. Further, the electricity that is retailed outside the state is not in competition with the electricity consumed within the state. Without competition

there can be no discrimination. *Public Utility, supra.*

In the present case the Legislature has determined that instead of a strict 4% gross receipts tax on the retail sale of electricity they would impose a 2% tax on the generation and a 2% tax on the retail sale. In this instance we find no discrimination. All producers of electricity are subject to the energy tax. All producers who retail their electricity in New Mexico can take advantage of the credits provided in § 9. The energy tax does not place the out-of-state producer at a disadvantage when competing against the in-state producer.

### (2) *Multiple Burden Test*

■ Appellants also argue that the energy tax is discriminatory because its sole and exclusive economic impact is upon an interstate transaction—the transmission of electricity for consumption in other states. They cite as authority, *Mich.-Wis. Pipe Line Co. v. Calvert*, 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583 (1954). In that case the United States Supreme Court invalidated a Texas tax on the occupation of "gathering gas," measured by the volume of gas "taken," because the incidence of the tax had been delayed beyond the step where production had ceased and transmission in interstate commerce had begun. The Court held that the incidence of the tax was "on the exit of gas from the State," and found that the gathering of the gas into transmission lines was an integral part of interstate commerce. *Id.* at 167, 74 S.Ct. 396. Had Texas been allowed to impose such a tax, the door would have been opened for other states on the line to tax the volume of gas in the pipeline as it crossed their boundaries. The net effect would have been "to resurrect the customs barriers which the Commerce Clause was designed to eliminate." *Id.* at 170, 74 S.Ct. at 403.

Appellants contend that the Electrical Energy Tax Act carries the vice condemned in *Michigan-Wisconsin* further, stating that it is only interstate transmission and consumption of electricity that incurs any mon-

etary liability by reason of the energy tax. We cannot agree with their analysis.

There is a distinct difference between the generation of electricity and the transmission of electricity as it relates to interstate commerce. The United States Supreme Court has held that:

[T]he process of generation is as essentially local as though electrical energy were a physical thing; and to that situation we must apply, as controlling, the general rule that commerce does not begin until manufacture is finished, and hence the commerce clause of the Constitution does not prevent the state from exercising exclusive control over the manufacture.

*Utah Power & L. Co. v. Pfost,* 286 U.S. 165, 181, 52 S.Ct. 548, 552, 76 L.Ed. 1038 (1932).

The energy tax is a tax on the generation of electricity and electricity can only be generated once. Since the electricity is generated in the State of New Mexico, only New Mexico can impose a tax on the generation. Only if the tax were imposed upon some later, nonlocal process would the *Michigan-Wisconsin* case be applicable.

For the reasons stated, we affirm the trial court and hold the Electrical Energy Tax to be constitutional and valid.

IT IS SO ORDERED.

SOSA and EASLEY, JJ., concur.