[No. 39872-9-II.    Division Two.    November 16, 2010.]

PUGET SOUND ENERGY, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Robert L. Mahon III* (of *Perkins Coie LLP*), for appellant.

*Robert M. McKenna, Attorney General,* and *Chuck Zalesky, Assistant,* for respondent.

¶1 WORSWICK, A.C.J. — Puget Sound Energy (PSE), a Washington natural gas service provider, appeals the superior court's summary judgment order in favor of the Washington State Department of Revenue (DOR) following an action for a refund of taxes paid. PSE contends that it is entitled to a public utility tax (PUT) exemption under chapter 82.16 RCW. We affirm.

## FACTS

¶2 Washington law imposes a PUT upon light and power businesses, gas distribution businesses, urban transportation businesses, and various other entities that operate in this state. RCW 82.16.020. PSE is an electricity and natural gas service provider that serves over 750,000 customers in the Puget Sound region.[1] The Washington Utilities and Transportation Commission (WUTC) regulates PSE. WUTC tariff schedules authorize PSE to charge its customers a "customer charge," a "delivery charge," and a charge for the natural gas itself.

¶3 PSE buys natural gas directly from producers or gas marketers and then contracts with large-diameter, high pressure pipeline companies to move the gas to PSE's service area. PSE contracts with Northwest Pipeline GP (Northwest) for this purpose.[2] Most of PSE's natural gas is

---

[1] PSE is a "gas distribution business" under Washington law. Within the natural gas industry context, PSE is a "local distribution company."

[2] The Federal Energy Regulatory Commission regulates Northwest and sets the amount Northwest is permitted to charge for this service.

obtained from sources in the Canadian provinces of British Columbia and Alberta, which the producer transfers to Northwest's pipelines.[3] Northwest then transports the natural gas to PSE's "meter points" (also referred to as "gate stations"), where PSE prepares the natural gas for delivery to its customers by reducing the pressure and adding an odorant. From January 1999 through December 2003, PSE paid Northwest nearly $265 million for the transportation services Northwest provided.

¶4 In February 2005, DOR conducted an excise tax audit of PSE that covered the January 1999 through June 2003 tax reporting periods. As part of the audit, PSE requested a credit for overpaid PUT. According to PSE, during the audit period it erroneously overpaid $9,247,042 when it failed to take a deduction for amounts paid to Northwest for services that had been "furnished jointly" by PSE and Northwest under RCW 82.16.050(3).[4] DOR denied the claim and DOR's Appeals Division upheld the denial. DOR based its decision largely on the fact that PSE and Northwest engage in "distinct business activities" and that PSE failed to demonstrate that Northwest was "capable of being taxed" for purposes of the statute.[5]

¶5 In late 2007, PSE filed an action in Thurston County Superior Court under RCW 82.32.150 and RCW 82.32.180, seeking a refund of taxes paid. DOR moved for summary judgment, which the trial court granted. PSE appeals.

## ANALYSIS

¶6 The issue before us is whether PSE is entitled to a PUT deduction under RCW 82.16.050(3) for the amount it

---

[3] Northwest is also a "gas distribution business" under Washington law.

[4] RCW 82.16.050(3) provides that in computing PUT, a taxpayer may deduct from gross income "[a]mounts actually paid by a taxpayer to another person taxable under this chapter as the latter's portion of the consideration due for services furnished jointly by both, if the total amount has been credited to and appears in the gross income reported for tax by the former."

[5] DOR does not make this "capable of being taxed" argument on appeal here.

paid to Northwest for natural gas transportation services. PSE makes three primary arguments in support of its contention that the PUT deduction applies: (1) the plain meaning of "jointly" within RCW 82.16.050(3) includes the PSE and Northwest activities, (2) the antipyramiding purpose and structure of the PUT confirms this plain meaning, and (3) DOR's longstanding administrative rules provide for the deduction.

¶7 We review summary judgment orders de novo. *Qwest Corp v. City of Bellevue*, 161 Wn.2d 353, 358, 166 P.3d 667 (2007). A trial court properly grants summary judgment when no genuine issues of material fact exist, thereby entitling the moving party to a judgment as a matter of law. CR 56(c). We draw all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860-61, 93 P.3d 108 (2004). Questions of fact may be determined on summary judgment as a matter of law only where reasonable minds could reach but one conclusion. *Alexander v. County of Walla Walla*, 84 Wn. App. 687, 692, 929 P.2d 1182 (1997).

¶8 Statutory interpretation questions are questions of law we review de novo. *Dot Foods, Inc. v. Dep't of Revenue*, 166 Wn.2d 912, 919, 215 P.3d 185 (2009). When construing a statute, our objective is to ascertain and carry out the legislature's intent. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004)). "Statutory interpretation begins with the statute's plain meaning." *Lake*, 169 Wn.2d at 526. We discern the plain meaning from the ordinary meaning of the language at issue, the statute's context, related provisions, and the statutory scheme as a whole. *Lake*, 169 Wn.2d at 526 (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)). Even though we look to the broader statutory context, we do not add words where the legislature has not included them, and we construe statutes " 'such that all of the language is given effect.' " *Lake*, 169 Wn.2d at 526 (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

¶9 If we determine that the statute is unambiguous after reviewing its plain meaning, our inquiry ends. *Lake*, 169 Wn.2d at 526. Only if the statute is ambiguous do we consider the legislative history and circumstances surrounding the statute to determine legislative intent. *Lake*, 169 Wn.2d at 527 (quoting *Rest. Dev.*, 150 Wn.2d at 682). Courts also avoid interpreting a statute in a way that leads to an absurd result because we presume the legislature did not intend an absurd result. *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 620, 229 P.3d 774 (2010).

¶10 We construe tax exemptions and deductions narrowly. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 455, 210 P.3d 297 (2009). We may look to the dictionary definition of undefined terms when interpreting the meaning of a tax deduction statute. *HomeStreet*, 166 Wn.2d at 451. But the burden is on the party asserting the deduction to show that it qualifies for the deduction. *HomeStreet*, 166 Wn.2d at 455.

## I. Plain Meaning of RCW 82.16.050(3)

¶11 PSE first contends that PSE and Northwest are providing "services" and that under the plain meaning of the word "jointly" as used in RCW 82.16.050(3), PSE qualifies for the PUT deduction. PSE further argues that the service it provides, the delivery of natural gas to consumers, cannot be completed without the joint efforts of Northwest. DOR rejects this interpretation and contends that consumers did not hire PSE for natural gas transportation services; instead, PSE only sells a commodity and does not furnish a service jointly with Northwest.

¶12 DOR's assertion that PSE is not providing a "service" is a proposition that lacks authority. Chapter 82.16 RCW uses the word "service" broadly. The parties stipulated below that PSE provides natural gas "services" to customers. The pivotal issue is whether the services they both provide are distinct services, separate and apart from each other, or whether their individual services essentially com-

bine to create one overarching natural gas service "jointly furnished."

¶13 Washington's PUT is a tax on gross income, subject to limited deductions and exemptions. *See* RCW 82.16.010(12), .050. The tax deduction at issue here stems from RCW 82.16.050(3), which provides a deduction for "[a]mounts actually paid by a taxpayer to another person taxable under this chapter as the latter's portion of the consideration due for services furnished jointly by both, if the total amount has been credited to and appears in the gross income reported for tax by the former." The statute provides no further guidance on the meaning of "services furnished jointly by both," and no legislative history exists to illuminate any further details.

¶14 PSE encourages us to read the phrase "services furnished jointly by both" in an inclusive manner, such that its activities with Northwest are subject to the exemption. PSE suggests that when the undefined word "jointly" is defined and read to mean "working together," it becomes clear that, because PSE and Northwest are working together to provide natural gas, the exemption applies. DOR argues that such a broad reading is inappropriate.

¶15 PSE and Northwest each provide related but very different natural gas services. As the parties stipulated to below, PSE is a "local distribution company" and Northwest is not. While PSE is dependent upon Northwest to provide natural gas services to their customers, each company plays a very different role in the process. Reading the "services jointly furnished" language of RCW 86.16.050(3) to include the amounts PSE paid to Northwest requires a broad reading of the statute, which runs counter to our narrow construction of tax exemptions.

## II. Antipyramiding Purpose

¶16 PSE also contends that the antipyramiding purpose and structure of the PUT supports a deduction under the plain language of RCW 82.16.050(3). We disagree.

¶17 PSE cites to *Public Utility District No. 2 of Grant County v. State*, 82 Wn.2d 232, 510 P.2d 206 (1973) (*PUD No. 2*), and a series of DOR manuals and documents as support for this proposition. In our judgment, *PUD No. 2* is not dispositive as it only generally suggests that PUT is imposed only once under Washington's tax scheme. 82 Wn.2d at 241. PSE assigns great weight to these general sources, but they do not compel a PUT deduction in this case. As DOR points out, no legislative history exists to support PSE's position that the legislature sought to prevent pyramiding of the tax in all instances.

¶18 As persuasive authority for its antipyramiding argument, PSE also points to a 1974 trial court decision, which it was a party to, regarding the RCW 82.16.050(3) tax exemption. *Puget Sound Power & Light Co. v. State*, No. 38039 (Thurston County Super. Ct., Wash. Apr. 24, 1974). There, PSE and DOR litigated the application of the PUT as it related to PSE's electric energy segment, the trial court holding that PSE was entitled to deduct from its PUT base amounts paid to other utilities for the "wheeling" of electricity.[6] This trial court opinion has no precedential value here, nor do we have the entire record from that case to appreciate the underlying facts. Furthermore, the wheeling of electricity involves a different process from the one involved here for the transport of natural gas. This antipyramiding argument, however, is contingent upon a finding that Northwest and PSE are providing "services jointly furnished." Without that finding, any antipyramiding purpose of the PUT would not preclude the taxation of two parties providing services independently. Because PSE and Northwest are not providing "services jointly furnished," PSE's argument here fails.

## III. Agency Rules

¶19 PSE finally points to DOR administrative rules interpreting RCW 82.16.050(3) to bolster its argument that

---

[6] The "wheeling" of electricity is defined by DOR as "the activity of delivering or distributing electricity owned by others using power lines and equipment of the person doing the wheeling." WAC 458-20-179(3)(a).

its payments to Northwest qualify for a PUT deduction. Whether an agency's construction of a statute is accorded deference depends on whether the statute is ambiguous. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994). Where an agency is charged with the administration and enforcement of a statute, we accord the agency's interpretation of an ambiguous statute great weight in determining legislative intent. *Waste Mgmt.*, 123 Wn.2d at 628. A statute is ambiguous if it has more than one reasonable interpretation. *McLane Co. v. Dep't of Revenue*, 105 Wn. App. 409, 413, 19 P.3d 1119 (2001). We do not find RCW 82.16.050(3) to be ambiguous. Even if we did, the administrative rules PSE cites do not support its argument.

¶20 WAC 458-20-179(9) provides in relevant part that the following may be deducted from the gross income under PUT:

> (c) Amounts actually paid by a taxpayer to another person taxable under chapter 82.16 RCW as the latter's portion of the consideration due for services jointly furnished by both. This includes the amount paid to a ferry company for the transportation of a vehicle and its contents (but not amounts paid to state-owned or operated ferries) when such vehicle is carrying freight or passengers for hire and is being operated by a person engaged in the business of urban transportation or motor transportation. It does not include amounts paid for the privilege of moving such vehicles over toll bridges. However, this deduction applies only to the purchases of services and does not include the purchase of commodities. The following examples show how this deduction and the deduction for sales of commodities would apply:

> (i) CITY Water Department purchases water from Neighboring City Water Department. CITY sells the water to its customers. Neighboring City Water Department may take a deduction for its sales of water to CITY since this is a sale of water (commodities) to a person in the same public service business. CITY may not take a deduction for its payment to Neighboring City Water as "services jointly furnished." The service or sale of water to the end consumers was made solely by CITY and was not a jointly furnished service.

(ii) Customer A hires ABC Transport to haul goods from Tacoma, Washington to a manufacturing facility at Bellingham. ABC Transport subcontracts part of the haul to XYZ Transport and has XYZ haul the goods from Tacoma to Everett where the goods are loaded into ABC's truck. ABC may deduct the payments it makes to XYZ as a "jointly furnished service."

PSE customers pay for natural gas and the corresponding transportation of that gas from PSE gate stations to their home or place of business. This is very different from the subcontractor analogy in WAC 458-20-179(9)(c)(ii). If the facts were such that Northwest operated the lower capacity pipelines and other infrastructure that PSE used to transport natural gas from its gate stations to the customer, then PSE's argument would prove more fruitful. Instead, it is solely PSE that prepares the natural gas for delivery to its customers by reducing the pressure at its gate stations and adding an odorant.

## CONCLUSION

¶21 Under the required narrow construction of tax exemptions and in light of the high burden the law places upon the taxpayer, PSE has not made the requisite showing to qualify for the PUT exemption under RCW 82.16.050(3). PSE and Northwest are not providing "services jointly furnished." Thus, PSE's argument fails and we affirm.

¶22 Affirmed.

ARMSTRONG, J., and ALEXANDER, J. PRO TEM., concur.

Review denied at 171 Wn.2d 1010 (2011).